Gretz *v.* Esslinger's, Inc., Appellant.

Argued January 6, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused January 17, 1968.

*Abraham L. Shapiro,* with him *Norman C. Henss, Harold Greenberg,* and *Cohen, Shapiro, Berger & Cohen,* for appellant.

*Lester J. Schaffer,* with him *Herman N. Silver,* for appellee.

OPINION BY MR. JUSTICE COHEN, November 14, 1967:

Appellee, Karl Gretz, in December, 1963, received an arbitration award of $40,000; ultimately judgment was entered on the award and was affirmed by this Court. *Gretz v. Esslinger's, Inc.,* 416 Pa. 111, 204 A. 2d 754 (1964). Subsequent to the rendition of the award, Gretz was adjudicated a bankrupt and the judgment was marked to the use of the trustee of the bankrupt estate. On February 2, 1965, the trustee as judgment creditor garnished one of appellant's (Esslinger's) bank accounts; the garnishee then paid the amount of the judgment plus interest and costs to date and the judgment creditor's attorney ordered the judgment satisfied against the garnishee.

Thereafter, appellant filed the present petition to have the main judgment satisfied of record. In his answer to the petition, the trustee in bankruptcy admitted receipt of payment of the amount of the judgment plus interest and costs; but asserted that because the funds were "tied up" as a result of further proceedings instituted after payment to him by appellant in the federal district court which enjoined trustee from distributing the money to creditors of the bankrupt estate, he would not satisfy the judgment until appellant paid interest to the bankrupt estate. The court below denied appellant's motion for judgment on the pleadings.

The effect of the lower court's opinion is to permit a fiduciary who has been paid the full amount of a judgment plus interest and costs, to refuse to satisfy the judgment even though two acts of the legislature make the satisfaction mandatory. Act of March 14, 1876, P. L. 7, 12 P.S. §978;[1] Act of March 27, 1865, P. L. 52, 12 P.S. §977.[2]

---

[1] *"In all cases where a judgment has been . . . entered* in any court of record in this Commonwealth, . . . *the court* having jurisdiction *shall, upon application* by the defendant . . . in the said judgment, . . . *setting forth,* under oath, *that the same, with all legal costs* accrued thereon, *has been fully paid,* grant a rule on the plaintiff . . . to show cause why the said judgment should not be marked satisfied of record, at his . . . costs; and *upon the hearing of such rule, should it appear to the satisfaction of the court that said judgment has been fully paid,* as set forth in the application of the defendant . . ., *the said court shall then direct the prothonotary to mark such judgment satisfied* of record, and shall also enter a decree, requiring the plaintiff . . . to pay all costs incurred in the premises." (Emphasis supplied.)

[2] *"In all cases where a judgment has . . . been . . . entered* in any court of record in this commonwealth, . . . *and it shall appear, by the production of the record, that the same has . . . been fully paid, under or by virtue of an execution* or executions issued thereon, *and satisfaction* has not been entered upon the judgment index or judgment docket of said court, *it shall be the duty of the court,*

At the moment that the garnishee paid the judgment in full plus interest and costs to date, an unqualified right accrued to the appellant to have the original judgment marked satisfied. It is clear that when the trustee executed on the judgment against the garnishee and received full satisfaction thereof, the defendant-appellant on the original judgment had met his full obligation on that judgment to the plaintiff-appellee, and satisfaction of the original judgment is required by the plain intendment of either Act.

The court below relied principally upon two cases: *Felt v. Cook & Hackett*, 95 Pa. 247 (1880); *O'Connor v. Flick*, 265 Pa. 49 (1919), wherein we held that in order for a defendant to be entitled to a decree requiring satisfaction of a judgment, he must produce competent evidence to support a finding of actual payment in full. Since, according to the lower court's view, no competent evidence was produced, it concluded that defendant-appellant was not entitled to satisfaction of the judgment. However, unlike the two cases relied upon by the lower court, here the defendant-appellant has produced the requisite competent evidence to support a finding of actual payment in full. Since proof of actual payment is the only prerequisite necessary to establish an unqualified right to have a judgment marked satisfied, appellee's answer admitting that the full amount of the judgment plus interest and costs had been paid clearly supplied the *quantum* of competent evidence required.

The lower court held that since the appellant chose to proceed on petition and answer rather than taking depositions, the court was bound to accept as true all

in which said judgment . . . has been entered, at the instance of any party interested, upon the payment of a fee of twenty-five cents to the prothonotary, *to direct said prothonotary to* enter satisfaction upon the judgment index or judgment docket, and the record thereof." (Emphasis supplied.)

averments of fact in appellee's answer properly pleaded. Accordingly, it accepted as true the averment that appellant caused the proceeds of the judgment to be unavailable for distribution by the trustee. Admitting as true the averment that the trustee was denied the availability of the funds for distribution purposes, this should not and does not preclude a court from determining the legal consequences flowing from the admitted averment.

The court below unwittingly foreclosed a consideration of the bankruptcy law when it asserted that because the funds were "unavailable for distribution" *a fortiori* appellee's claim for interest owed must be sustained. Since the appellee is admittedly a trustee in bankruptcy, it is our view that this Court must analyze the meaning of the language "unavailable for distribution" in the framework of a trustee in bankruptcy situation.

Under §47a(2) of the Bankruptcy Act, 11 U.S.C. §75a(2),[3] a trustee shall deposit funds held by him in interest-bearing savings deposits, if authorized by the court. Even though there is a restraining order preventing the trustee from *distributing* the funds, the trustee is not at all precluded from *investing* such funds. Since the trustee in this case did not seek court approval to deposit the money in an account which would have generated interest, he should not now be permitted to obtain from appellant that which he himself could have secured for the bankrupt estate by proper management of its funds. In a situation such as the instant one, the fiduciary has the funds, can invest them with consent of the court, and thereby earn

---

[3] "§75. Trustees; duties (a) Trustee shall . . . (2) deposit all money received by them in designated depositories initially in demand deposits; and subsequently, if authorized by the court, in interest-bearing savings deposits, time certificates of deposit, or time deposits-open account; . . . ."

interest for the creditors or beneficiaries. If the trustee could have earned interest on the funds in his possession, it cannot be said that he now has a claim for that interest against an appellant who in no way has prevented the trustee from realizing interest on such funds.

Moreover, the order restraining distribution in this case was the result of action commenced in the federal system, and the courts of Pennsylvania have no jurisdiction to impose sanctions upon a disputant in a federal bankruptcy case. In fact, as indicated at argument, the federal district court required appellant to post bond before it restrained distribution, and appellee if he has any claim for interest or has suffered any harm whatsoever out of the federal courts proceedings, should pursue his remedy upon the bond to which alone he has recourse. The appellant's liability, if any, should be imposed by the federal courts and not by the courts of Pennsylvania.

The order of the court below is reversed and the case remanded to the lower court so that satisfaction of the judgment may be required.

---

Dissenting Opinion by Mr. Justice Roberts:

The majority has decided this case upon two wholly erroneous assumptions: (1) that, when the garnishee on February 2, 1965 paid the amount of the judgment plus interest and costs to date, the appellant acquired an unqualified right to have that judgment marked satisfied of record regardless of any action taken by appellant and (2) federal bankruptcy law not only deprives this Court of jurisdiction to award interest to appellee but also mandates that appellee was the author of his own injury.

I believe that the court below correctly concluded that it was bound to accept as admitted appellee's allegation that appellant's actions effectively tied up the

garnished funds and made them unavailable for distribution.[1] Esslinger, the moving party below, elected not to take depositions but rather to proceed on the petition and answer. Under Pa. R. C. P. 209(b), in this procedural posture "all averments of *fact* responsive to the petition and properly pleaded in the answer shall be deemed admitted. . . ." (Emphasis supplied.)

It is therefore necessary to proceed upon the assumption that, though the trustee received sufficient funds through the garnishment action to satisfy the outstanding judgment, appellant prevented the trustee from utilizing or distributing these funds. It has been the rule since *Miller v. Bank of New Orleans*, 5 Wharton 502 (1840), that only a bona fide tender of the amount due stops the running of interest. This rule flows directly from the function performed by the grant of interest. We said in *Kelsey v. Murphy*, 30 Pa. 340, 341 (1858), and reiterated in *Carbondale City School District v. Fidelity and Deposit Company of Maryland*, 346 Pa. 491, 492, 31 A. 2d 279, 280 (1943), that: " 'Interest has been defined "to be a compensation allowed to the creditor for delay of payment by the debtor," and is said to be impliedly "due whenever a liquidated sum of money is unjustly withheld." ' " Appellee's allegation, admitted by appellant, that appellee was unable to distribute the funds received demonstrates that payment by the garnishee was, in fact, no payment at all.

Appellant's sole contention is that the trial court, confronted with a petition under the Act of 1876, must

---

[1] Paragraph 7 of appellee's answer states: "Pillion [the bankruptcy trustee] avers further that the funds paid by the garnishee as a result of the attachment execution were effectively tied up by petitioner's proceedings before the referee, the District Court and the Court of Appeals, and since said funds were not available for distribution in the bankrupt estate solely because of petitioner's actions, interest should run thereon."

enter an order directing that the judgment be marked satisfied if it appears that the judgment has been "paid."[2] In light of appellee's allegation that the federal court litigation prevented distribution of the funds to the bankrupt's creditors, I fail to see in what manner the judgment can be said to have been paid. Although the trustee did have possession of the funds, under the admitted state of facts the judgment was not paid until appellant relinquished its claim. To conclude, as does the majority, that the proceeds of the garnishment action constitute payment is to ignore both the admitted facts and appellant's subsequent actions. The proverbial rabbit has never been better concealed.

The majority raises the spectre that the lower court decision would permit a fiduciary who has been paid the full amount of his judgment to refuse to satisfy that judgment. Of course, given the admitted set of facts, the trustee here has not been paid. Furthermore, the trustee's position is not analogous to that of an ordinary exceptant to an account in the orphans' court or other complainant to a fiduciary's accounts. In such situations the usual rules that interest runs from the date a liquidated sum becomes due and from the date of judgment on an unliquidated sum would apply. See, e.g., *Crawford's Estate,* 313 Pa. 127, 169 Atl. 438 (1933). In the instant case, the crucial distinction

---

[2] Cited for this proposition are *Atkinson v. Harrison,* 153 Pa. 472, 26 Atl. 294 (1893); *Melan v. Smith,* 134 Pa. 649, 19 Atl. 738 (1890) and *Felt & Co. v. Cook & Hackett,* 95 Pa. 247 (1880). None of these cases support appellant's theory that the lower court is confined merely to an examination of whether the garnishee actually paid the judgment. In *Atkinson* we held that the Act of 1876 is applicable only in clear cases of undisputed payment; in *Melan* that the trial court cannot investigate the original equities or apply cross demands; and in *Felt* that evidence which might be admitted to show payment in a pending adversary proceeding prior to verdict is not admissible under the act.

98

is that the federal court proceedings began after the rendition of judgment while exceptions would be filed prior to judgment and would thus not present a situation requiring the accrual of interest.

The majority places substantial reliance upon the 1963 amendment to §47(a)(2) of the Bankruptcy Act permitting the trustee with court approval to deposit funds of the bankrupt in interest bearing accounts. The briefs and the opinion of the court below contain *not a hint* that federal bankruptcy law is here relevant. Our precedents are legion that a matter *not* asserted as either a theory of recovery or a matter of defense *cannot* be successfully asserted for the first time upon appeal. See cases cited and discussed in 2 P. L. E., Appeals §§81-85. Apparently the majority justifies its sua sponte treatment of §47(a)(2) on the theory that "the courts of Pennsylvania have no jurisdiction to impose sanctions upon a disputant in a federal bankruptcy case." Although I can agree with this general proposition, I can find no authority in the Bankruptcy Act, the federal cases or our decisions for the bald majority assertion that the lower court's order would intrude upon the federal domain. Nor can I find a shred of support for the majority's conclusion that appellee's *sole* remedy is upon the bond posted in the federal courts. Even if §47(a)(2) were applicable, it would merely decrease the amount of interest recoverable for it is highly unlikely that any deposit approved by a federal court would have returned the legal rate of interest which appellee is, in my view, entitled to receive. Therefore, with interest still owing, the lower court properly refused to order the judgment satisfied of record.

Nor can it be said with certainty that the trustee was the author of his own injury because he failed to petition the court for permission to deposit the garnished funds in interest bearing accounts. Prior to

the 1963 amendment the trustee was subject to surcharge if funds were not deposited in designated, non-interest bearing, depositories unless all creditors consented to an interest bearing deposit. See *Huttig Mfg. Co. v. Edwards,* 160 Fed. 619 (8th Cir. 1908); *In re Dayton Coal & Iron Co.,* 239 Fed. 737 (E.D. Tenn. 1916); 1963 United States Code Congressional and Administrative News 634, reprinting Senate Report No. 147 to accompany H.R. 2849, 88th Cong., 1st Sess. The federal courts have *yet* to construct standards governing those situations in which the trustee should apply for permission to utilize an interest bearing deposit. Absent those standards, it is pure conjecture to assume that the trustee would have been able to procure the necessary court approval and thus obtain interest.

Reduced to its essentials, the majority opinion holds that a debtor with one hand may pay his debt while with the other simultaneously deprive his creditor of the *use* of those funds and yet have the judgment satisfied. This is a proposition I cannot accept and must therefore dissent.

Mr. Justice MUSMANNO and Mr. Justice EAGEN join in this dissenting opinion.