**Florence SHAW, Administratrix of the Estate of Charles Edward Gilbert, Deceased, Plaintiff,**

v.

**Gary F. BOTENS, Defendant,**

and

**Nationwide Mutual Insurance Company, Garnishee.**

**Civ. No. 8824.**

United States District Court
M. D. Pennsylvania.

Dec. 19, 1967.

As Amended Jan. 16, 1968.

Louis A. Fine, Honesdale, Pa., Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiff.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for defendant and garnishee.

SHERIDAN, Chief Judge.

This matter is before the court on the objections of Nationwide Mutual Insurance Company, garnishee, to interrogatories propounded by plaintiff, and to plaintiff's motion to produce certain records related to this action.

Plaintiff, Florence Shaw, Administratrix of the Estate of Charles Edward Gilbert, brought an action under the Pennsylvania Wrongful Death and Survival Acts to recover damages for the death of Charles Edward Gilbert who was killed while riding as a passenger in a car driven by defendant, Gary F. Botens, when the defendant lost control of his

car and crashed into a tree. Jurisdiction was based on diversity of citizenship and the amount involved. 28 U.S.C.A. § 1332. In a trial to the court without a jury, judgment was entered in favor of plaintiff and against defendant for $3,485.08 in the Wrongful death action and $30,000 in the Survival action. Defendant's motions for judgment n. o. v. and for a new trial were denied. Defendant did not appeal.

Pursuant to the insurance contract, defendant was represented by counsel of Nationwide's choice who was entrusted with all phases of the case from investigation through the post trial motions. Defendant did not have private counsel. Plaintiff offered to settle for the policy limits of $25,000, but Nationwide refused. After denial of the post trial motions, Nationwide paid plaintiff the $25,000.

Plaintiff then filed a praecipe for writ of execution against defendant. The writ directed the Marshal to attach the property of the defendant in the possession of Nationwide as garnishee. At the same time, it directed interrogatories to Nationwide pursuant to Rule 3144 of the Pennsylvania Rules of Civil Procedure, 12 P.S.Appendix.[1] Nationwide answered interrogatories 1, 2 and 3 concerning the existence of and terms of the insurance policy, and interrogatories 21, 22 and 23 concerning the judgment, the payment of the policy limits and that it is indebted to defendant for $731.09, representing interest from the time of the judgment to the payment of the policy limits. It objected to all intervening interrogatories, 4 to 20 inclusive, as not within the scope of the attachment execution proceedings and as not relevant to the attachment of any debt, property, title or interest of defendant under the control of Nationwide. Plaintiff also filed a motion for production of records under Rule 34 of the Federal Rules of Civil Procedure which sought to obtain for inspection many of the documents whose existence was sought to be ascertained by the interrogatories.

Plaintiff contends that Nationwide breached its duty of fair representation by rejecting plaintiff's offer of settlement thereby subjecting defendant to liability for the deficiency between the judgment and the policy limits;[2] that a claim for the breach lies against an insurer; that the claim is assignable and that the attachment worked an assignment; and that the garnishment and interrogatories under Pennsylvania procedure constitute a pleading which states the cause of action of breach of duty of fair representation. Nationwide contends that there is no debt in the present posture of this lawsuit which is attachable through garnishment; and that in effect plaintiff is attempting to set herself up as a third party beneficiary under the insurance contract, which was not intended by either Nationwide or defendant.

In Gray v. Nationwide Mut. Ins. Co., 1966, 422 Pa. 500, 223 A.2d 8, the Pennsylvania Supreme Court clearly held that an insured has a cause of action in assumpsit against an insurer which subjects the former to liability by virtue of a breach of the fiduciary duty of good faith representation. In Gray, there was an actual assignment to the injured party of the insured's rights against the insurer, which the court held to be a proper assignment. The question presented here is whether under the doctrine of equitable assignment and by means of garnishment proceedings, plaintiff is permitted to pursue the same course without an actual assignment.

Plaintiff has cited no Pennsylvania authorities for her contention and this court has found none. The question which is basic to all others is whether there existed, either actually or potential-

---

1. Rule 69 of the Federal Rules of Civil Procedure provides that the procedure in proceedings supplementary to and in aid of execution shall be in accordance with State practice.

2. The deficiency is $8,485.08, plus interest.

ly, a right or debt of defendant capable of being enforced by plaintiff. This court believes the answer must be that the claim, if it exists, has not matured to the point where it is enforceable through garnishment proceedings.

We must distinguish between the accrual of a cause of action and its enforcement. Nationwide's action or inaction, whether known or unknown to defendant, may have given rise to a cause of action for breach of duty of good faith. Thus, to that extent the facts giving rise to a possible cause of action were fixed at some previous time, and a claim exists, potentially at least. Defendant, however, has not taken any steps to assert that claim. He has not made a demand on Nationwide. He has not acknowledged that the right exists by means of an assignment or by other means. He may not even feel aggrieved.

In Paul v. Kirkendall, 1957, 6 Utah 2d 256, 311 P.2d 376, the Supreme Court of Utah had a similar situation before it. A plaintiff-judgment creditor sought to enforce, through garnishment, his debtor's supposed right of action for breach of duty of good faith representation against the liability insurer which had refused to settle the claim. The court rejected the proposition that the chose in action in favor of the defendant-judgment debtor and against the garnishee had matured to the point where it represented a debt which could be reached in garnishment:

> "In plaintiffs' brief it is contended that the chose in action in favor of defendant and against the garnishee is a liquidated claim in the amount of $10,605.39. It is impossible either to agree with this contention or to follow the processes by which such conclusion is reached, and the contention is without facts to support the same."

The court also pointed out that the defendant-judgment debtor had asserted no claim against the insurer, and had not authorized the plaintiff-judgment creditor, through assignment, to assert the claim.

> "However, we are not here concerned with the substantive rights between Kirkendall and the Maryland Casualty Company. The insured is not here complaining of any act or omission on the part of garnishee by which he claims to have been damaged.

> "There is a complete lack of any suggestion that the plaintiffs have been authorized to protect defendant against the garnishee. There is no suggestion that defendant's rights against the garnishee, if any, have been assigned to plaintiffs."

Finally, the court held that the chose in action, if held by anyone, was held by the defendant-judgment debtor, and there was nothing in the insurer's hands which would be subject to garnishment.

> "Garnishee cannot be held liable under a chose in action not held by garnishee. If held by anyone, the chose in action set out in plaintiffs' second reply to answer to garnishee is held by defendant, so far as appears.

> "Plaintiffs have proceeded on the theory that by their second reply to answers of garnishee there is presented by plaintiffs alone a justiciable issue between defendant and garnishee. Plaintiffs seek to make defendant in the original action brought by plaintiffs against defendant the plaintiff in this garnishee action for the purpose of having the liability of garnishee to defendant litigated. Plaintiffs ask judgment against garnishee in this proceeding, which is not the proper method to determine liability of garnishee to defendant upon the tort asserted by plaintiffs, but not asserted by the party who sustained the damage, if any.

> \* \* \* \* \* \*

> " \* \* \* It must be apparent that Maryland Casualty Company was not at any time the holder or possessor of a *chose of action against itself* belonging to the defendant. The garnishment rule does not contemplate litigation of a chose in action between the creditor and the garnishee. All garnishee is required to do is to hold

any property, goods, chattels, choses in action *of the defendant* which the garnishee has in his possession. Garnishee is not required to litigate his liability for a judgment under a chose in action held by him. If the garnishee surrenders the property of defendant being held by him and pays the money due to defendant from him, he has no further obligation except to truthfully report.

" * * * Unless garnishee was indebted to defendant on the unliquidated tort claim set out in plaintiffs' second reply, which we cannot concede, then all that could be determined is the question as to whether garnishee is holding a chose in action belonging to defendant. We are of the opinion that (as of the time the garnishment was served) the claim of defendant set out in the second reply is not a debt presently due from garnishee requiring garnishee to turn over the full sum of $10,605.39 plus interest. Rather it is an unliquidated tort claim.

* * * "

In 12 A.L.R.3d 1158, there is a collection of cases dealing with the assignability of an insured's right to recover against a liability insurer for rejection of a settlement offer. In all except one, there is a common factor—the insured acknowledged that a cause of action for breach of duty existed and he assigned the right to the injured party. The sole exception is Turgeon v. Shelby Mutual Plate Glass & Cas. Co., D.Conn.1953, 112 F.Supp. 355, where a statute dispensed with the need for formal assignment by subrogating the injured party to the insured's right. Pennsylvania does not have a comparable statute.

The need for maturity of the claim before it is effectively assignable has often been considered by the courts. In Critz v. Farmers Ins. Group, 1964, 230 Cal. App.2d 788, 41 Cal.Rptr. 401, 12 A.L.R. 3d 1142, there was an assignment of a claim after an offer of settlement was rejected by the insurance company but before judgment. On objection to the timeliness of the assignment, the court

held that the time the assignment was executed was not crucial because the attempted transfer of a future right operates as an equitable assignment which becomes operative when the right comes into existence. Nevertheless, an actual assignment was made by the insured. Other cases have considered the question of maturity of the claim in other contexts, such as whether a mere possibility is assignable and whether any attempted assignment is operative until judgment has been entered against the insured or perhaps until he has actually settled the judgment or has been subjected to execution. 12 A.L.R.3d 1158 § 2. These cases are not controlling here, for in Gray the court held the assignment was effective and capable of enforcement by the assignee, in an action of assumpsit, before defendant actually paid the judgment. What they do point up, however, is that maturity is important. The procedure used by plaintiff would permit a judgment creditor to pry into all affairs of his debtor to determine for himself the supposed rights of the debtor regardless of whether the liability was strong, weak, or non-existent, and to assert those claims regardless of the debtor's belief in the merits. It would seriously prejudice the debtor because he would be deprived of the right to bargain with the injured party for a release of liability as consideration for the assignment. See Gray v. Nationwide Mut. Ins. Co., supra. The judgment creditor could continually hold the judgment over the head of the debtor while he probed to determine what rights or causes of action of the debtor had not been asserted. After each unsuccessful effort, he could still look to the debtor for satisfaction.

The garnishment procedure used by plaintiff in this case is not applicable to any debt or claim of defendant against Nationwide. The garnishee's objections will be sustained.

In its interrogatories, Nationwide admits that it is indebted to defendant in the sum of $731.09 representing interest on the judgment from June 30, 1966, to November 9, 1966, and also is indebted

to him for such costs as may be taxed in this action. The costs are unliquidated, but the parties have advised that the costs are not substantial and will be settled independently of the garnishment proceedings.

Accordingly, judgment will be entered in favor of plaintiff and against Nationwide for $731.09 which is the only property of defendant currently in the possession of Nationwide.