403 F.2d 150
 Florence SHAW, Administratrix of the Estate of Charles Edward Gilbert, Deceased, Appellant,
v.
Gary F. BOTENS, by his Guardian ad litem, Donald Botens, Defendant, and
Nationwide Mutual Insurance Company, Garnishee-Appellee.
 No. 17185.
 United States Court of Appeals Third Circuit.
 Argued October 11, 1968.
 Decided November 19, 1968.
 
 Milford J. Meyer, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa. (Louis A. Fine, Honesdale, Pa., on the brief), for appellant.
 Hugh J. McMenamin, Warren, Hill, Henkelman & McMenamin, Scranton, Pa. (Walter L. Hill, Jr., Scranton, Pa., on the brief), for appellee.
 Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal seeks reversal of a District Court (1) judgment dated January 16, 1968, for plaintiff against the garnishee (Nationwide Mutual Insurance Company) in the amount of $731.09 (representing interest on $25,000. previously paid by the garnishee on account of plaintiff's June 30, 1966, judgment against defendant of $33,485.08), and (2) order dated December 19, 1967, sustaining objections of the garnishee to most of plaintiff's garnishment claim. Plaintiff contends that she was entitled to proceed in the garnishment action to recover $8,485.08, with interest thereon, in addition to the above $731.09.
 
 
 2
 After trial of this automobile accident personal injury action, claiming damages under the Pennsylvania Wrongful Death and Survival Acts for the death of a passenger, the judgment of June 30, 1966, for plaintiff was entered. The garnishment proceedings were instituted on December 12, 1966. The background facts and the conclusion of the District Court are summarized in the able District Court opinion, Shaw v. Botens, 278 F.Supp. 226 (M.D.Pa.1968), where the following language appears:
 
 
 3
 "Pursuant to the insurance contract, defendant was represented by counsel of Nationwide's choice who was entrusted with all phases of the case from investigation through the post trial motions. Defendant did not have private counsel. Plaintiff offered to settle for the policy limits of $25,000, but Nationwide refused. After denial of the post trial motions, Nationwide paid plaintiff the $25,000.
 
 
 4
 "Plaintiff then filed a praecipe for writ of execution against defendant. The writ directed the Marshal to attach the property of the defendant in the possession of Nationwide as garnishee. * * *
 
 
 5
 "Plaintiff contends that Nationwide breached its duty of fair representation by rejecting plaintiff's offer of settlement thereby subjecting defendant to liability for the deficiency between the judgment and the policy limits; that a claim for the breach lies against an insurer; that the claim is assignable and that the attachment worked an assignment; and that the garnishment and interrogatories under Pennsylvania procedure constitute a pleading which states the cause of action of breach of duty of fair representation. Nationwide contends that there is no debt in the present posture of this lawsuit which is attachable through garnishment; and that in effect plaintiff is attempting to set herself up as a third party beneficiary under the insurance contract, which was not intended by either Nationwide or defendant.
 
 
 6
 "In Gray v. Nationwide Mut. Ins. Co., 1966, 422 Pa. 500, 223 A.2d 8, the Pennsylvania Supreme Court clearly held that an insured has a cause of action in assumpsit against an insurer which subjects the former to liability by virtue of a breach of the fiduciary duty of good faith representation. In Gray, there was an actual assignment to the injured party of the insured's rights against the insurer, which the court held to be a proper assignment. The question presented here is whether under the doctrine of equitable assignment and by means of garnishment proceedings, plaintiff is permitted to pursue the same course without an actual assignment.
 
 
 7
 "Plaintiff has cited no Pennsylvania authorities for her contention and this court has found none. The question which is basic to all others is whether there existed, either actually or potentially, a right or debt of defendant capable of being enforced by plaintiff. This court believes the answer must be that the claim, if it exists, has not matured to the point where it is enforceable through garnishment proceedings." (278 F.Supp. 227-28)
 
 
 8
 This is not a case where the plaintiff is making a mere general contention that the insurer has not acted in good faith and with due care, since the record contains, in affidavit form, the following detailed statement of the plaintiff's principal claim in the execution proceeding:
 
 
 9
 "4. Upon institution of this action said Insurance Company retained Hugh J. McMenamin, Esquire, to represent both it and the defendant in the action and said attorney did in fact so represent both in the defense of this action;
 
 
 10
 "5. During the pendency of the primary action and prior to and during the trial thereof offers were made by plaintiff's attorneys to Mr. McMenamin to compromise and settle the same for an amount within the coverage of the said policy;
 
 
 11
 "6. At all times aforesaid Mr. McMenamin refused said offers and failed or refused to disclose the amount of insurance coverage under the said policy;
 
 
 12
 "7. On June 30, 1966, after the trial of the primary action, judgment was entered in favor of the plaintiff and against the defendant in the sum of $33,485.08;
 
 
 13
 "8. An attachment execution naming the said Insurance Company as garnishee has been issued on the said judgment and served upon it;
 
 
 14
 "9. By reason of the failure of garnishee to act in good faith in the defense and settlement of the primary action, the defendant therein has incurred a judgment which is in excess of the limits of coverage in the said policy and a cause of action has accrued to the defendant against the garnishee for the amount in which the judgment exceeds the policy coverage;
 
 
 15
 "10. Plaintiff's attachment has effected an assignment of the said cause of action from defendant to plaintiff;"
 
 
 16
 The Pennsylvania Supreme Court has held that the failure of an insurer to comply with its obligation to act in good faith and with due care in representing the interests of the insured constitutes a breach of a contractual obligation "for which an action in assumpsit will lie." See Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A.2d 8, 11 (1966). The Gray case held, further, that this contractual obligation was assignable by the insured to a plaintiff having secured a judgment in a personal injury action against the insured.[1]
 
 
 17
 The Pennsylvania Procedural Rules provide that a writ of execution is available to attach a debt owed by the garnishee to the defendant. See Rules 3101(b) (1) and 3102, 12 P.S.Appendix. As stated in paragraph 6 of the comments to these execution rules, they "provide a method for the attachment of the debt itself" and "The scope of attachment is also enlarged to include tangible or intangible property of the defendant in the custody, possession or control of a garnishee."[2] Rule 3148(a) provides: "A judgment entered against the garnishee * * * shall (1) be in the form of a money judgment if the garnishee owes a debt to the defendant."
 
 
 18
 The Pennsylvania Supreme Court has held that attachment works "an assignment to the plaintiff of the debt due to the defendant from the garnishee." See In re Boyd's Estate, 394 Pa. 225, 242-243, 146 A.2d 816, 825 (1958), and cases there cited. The Supreme Court of Pennsylvania has permitted attachment of amounts due under the terms of an insurance policy to a judgment debtor by the plaintiff who holds such judgment. See Boyle v. Franklin Fire Insurance Company, 7 W. & S. 76 (1844); Girard Fire & Marine Insurance Co. v. Field, 45 Pa. 129 (1863);[3] Fritchie v. Miller's Pa. Extract Co., 197 Pa. 401, 47 A. 351 (1900). In the Fritchie case, judgment was recovered by the representative of a minor child of a decedent against his employer. An attachment execution was issued against an insurance company which had insured the employer against all liability for damages on account of injuries suffered by its employees up to the amount of $1500. and which had contested its liability under the policy. The court used this language at page 404 of 197 Pa., 47 A. at page 351, in affirming judgment of liability against the insurance company garnishee:
 
 
 19
 "The only defense of the insurance company to the case at bar is, (1) that it has not consented to an assignment of any interests of the insured to the plaintiff, and (2) that the insured has not suffered any loss, and therefore cannot give to the plaintiff any better right against the insurer than it would have. The defense, however, is not an answer to the judgment against the insured, nor an obstruction to the issuance of an attachment execution, and a service of the same upon the insurer as garnishee. There is nothing in the policy which would justify a denial to the plaintiff of any rights secured to her, for the use of Maria Fritchie, or in the judgment entered by the court below; nor is there anything in the attachment execution and the service thereof upon the insurer as garnishee, which furnishes any just cause for complaint."
 
 
 20
 The District Court's conclusion that the claim had not matured sufficiently to make garnishment proceedings available because the insured defendant had not taken any steps to assert a claim and the garnishee insurance company had not conceded that it had violated its obligation to act in good faith and with due care in representing the interests of the insured does not appear to be consistent with the foregoing decision in the Fritchie case. The claim became definite and liquidated by the refusal of the insurer to settle prior to the entry of the June 30, 1966, judgment and the entry of that judgment in a definite amount, provided that plaintiff can establish its allegations that such insurer-garnishee failed "to act in good faith in the defense and settlement of the primary action" (par. 9, supra, at page 152).[4]
 
 
 21
 Furthermore, the Pennsylvania appellate courts have consistently determined the validity of alleged claims against an insurer-garnishee in garnishment proceedings in which such a garnishee has contested (as does the garnishee in this case) its liability under the policy. See, e. g., Paul v. Dwyer, 410 Pa. 229, 188 A.2d 753 (1963); Dariano v. Blacksom, 389 Pa. 96, 132 A.2d 186 (1957); Vrabel v. Scholler, 369 Pa. 235, 85 A.2d 858 (1952).
 
 
 22
 In making the difficult determination of what ruling the Pennsylvania appellate courts would make in this situation (where there are no cases precisely in point), we agree with appellant that the use of garnishment proceedings in this case is consistent with this language in the Gray case, supra, at page 12 of 223 A.2d:
 
 
 23
 "If we permit the assignment in cases such as the one at bar, bankruptcy proceedings would be unnecessary; the insured, after a judgment has been rendered against him, can follow the more simple and less expensive procedure of assigning the cause of action against the insurer, directly, to his judgment creditor."
 
 
 24
 Also, the following language from the Gray case (page 13 of 223 A.2d) negatives appellee's contention that the use of the garnishee process to determine the validity of this alleged claim under the policy would defeat "the express purposes of Gray" (page 9 of appellee's brief):
 
 
 25
 "As Judge Hoffman so ably reasoned in his dissenting opinion: `The fears of the lower court are unwarranted. The possibility of collusion between a judgment holder and an insured is no way increased by an assignment. If the insured's liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policyholder or in the name of the assignee, the policyholder would be intent upon relieving himself of the excess judgment, and the assignee would be seeking to secure the balance due him. If the insured's liability is terminated by the assignment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation.' Gray v. Nationwide Mutual Insurance Co., 207 Pa.Super. at 10, 11, 214 A.2d at 639. (Dissenting opinion by Hoffman, J., in which Ervin, P. J., and Watkins, J., joined.)
 
 
 26
 "Permitting an insured to assign his claim to the injured claimant would put the claimant on more of an equal footing with the insured's insurance company in settlement negotiations without tipping the balance against an insurer who could still refuse to settle in good faith. `This result may seem anomalous in that the plaintiff, who previously offered to settle his claim for $5,000, has now acquired the right to maintain against defendant insurer an action which arose by reason of that offer to settle. But it must be borne in mind that plaintiff merely stands in the shoes of the insured; it is the insured who has allegedly suffered the wrong at the hands of the insurer. It might be said that the result reached herein will cause more injured claimants to propose settlement for the policy limit when the insurance company is defending the action against an insured who is apparently judgment-proof. Yet the insurer has nothing to fear so long as its refusal to settle is made in good faith. And it is fundamental that the law favors settlements'. Brown v. Guarantee Insurance Company, [155 Cal.App.2d 679] 319 P.2d 69, 79, [66 A.L.R.2d 1202] (Emphasis added.)"
 
 
 27
 We conclude that the Pennsylvania garnishment proceeding is available to determine the validity of the alleged claim of the judgment debtor against the garnishee-insurer.[5] The judgment of January 16, 1968, and the order of December 19, 1967, will be vacated and the case remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The insurance policy issued by the insurer-garnishee includes virtually identical language to that in the policy before the court inGray supra (see footnote 2 at 223 A.2d 9), as follows (V(2) at pp. 4-5 of policy attached to Document 27):
 "* * * the Company shall:
 "(a) defend with counsel of its choice any suit against a person entitled to protection alleging such injury, sickness, disease or destruction and seeking damages on account thereof. Such suit shall be defended even if groundless, false or fraudulent. The Company may make any investigation, negotiation and settlement of any claim or suit as it deems expedient;
 * * * * *
 "(d) pay all interest on the entire judgment accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;
 * * * * *
 "Payments under this insuring agreement, except settlement of claims and suits, are in addition to the applicable policy limits."
 
 
 [2]
 Rules 3144 and 3145 of the Pennsylvania Rules of Civil Procedure make clear that the Interrogatories filed by plaintiff, together with the Answers to them, if ordered by the District Court, will constitute the pleadings in the contract action between plaintiff and the garnishee-insurer. The Pennsylvania Rules give ample protection to the defendant as well as the garnishee (Rules 3119, 3121, 3123, 3140, 3143(f), 3147, and 3149) and the Pennsylvania cases make clear that the judgment of June 30, 1966, against the defendant will be satisfied if the garnishee pays the balance due or settles the claim with the plaintiff. See Gretz v. Esslingers, Inc., 428 Pa. 90, 236 A.2d 508 (1967)
 
 
 [3]
 In this case the court used this language at pp. 131-133:
 "The same question is presented in each of these cases, and it is whether an unadjusted and unliquidated claim for a loss upon a policy of insurance against fire, is subject to attachment in the hands of the insurance company. * * * The District Court held the claim attachable, and the company brought these writs of error.
 "The objection to a recovery for such a reason seems technical in these cases, for there was no difference or dispute about the amount of the loss. It was settled on the proofs presented by the insured, without reference to the arbitrament provided for in the regulations attached to the policy in the case of dispute, or to the jury at the trial. It was settled by calculation, but notwithstanding this, it was insisted here that the claim was in the class of unliquidated damages when the writ was issued, and being so, was not subject to be attached.
 "We agree with the District Court in their judgment on the point that it was attachable.
 * * * * *
 "When a loss by fire has taken place, can we doubt but that the sum agreed to be paid by the insurers, in consideration of the premium paid, is prima facie `goods and effects,' and is parcel of the `personal estate' of the defendant? Because it is a chose in action, it is not therefore outside of the meaning of these terms. * * * But the difficulty is not this under the attachment process. It is that the amount is unliquidated, and for this reason it is supposed not to be within the meaning of the act. But this will not hold; otherwise debts due for goods sold and delivered, or work, labour, and services done and performed without the price being fixed, might not be attachable. Large debts on book-account might escape the process, which I do not believe has ever been considered to be the law.
 * * * * *
 "* * * but I think what was said in Fisher v. Consequa, 2 W.C.C.Rep. 382, in defining the foundation of the process, very well defines also to what it may be applied; that is, to `a demand arising ex contractu, the amount of which was ascertained, or which was susceptible of ascertainment by some standard referable to the contract itself, sufficiently certain to enable the plaintiff by affidavit to aver, or a jury to find it, might be the foundation of a proceeding by way of foreign attachment, without reference to the form of action, or the technical definition of debt, the expression used in the law.'"
 
 
 [4]
 Neither the District Court nor appellee has referred to any provision in the policy precluding garnishment of this alleged claim. In Gray v. Nationwide Mutual Insurance Company, 207 Pa.Super. 1, 214 A.2d 634, 639 (1965), the Pennsylvania Superior Court cited in its dissenting opinion, which was approved by the Pennsylvania Supreme Court, the many Pennsylvania cases holding that policy provisions against its transfer without the insurer's consent do not preclude assignment of claims for damages after the loss has occurred and rights under the policy have accrued
 
 
 [5]
 Estate of Warren L. Loose, Opinion of 1/29/68 (#51,115, O. C. Berks, Pa.), reaches this conclusion. Cases from other jurisdictions on this issue, which have differed in their results, are cited in Meyer, "Gray v. Nationwide and Beyond," 71 Dick.L.Rev. 257, 260-65 (1967); see, also, Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966); General Guaranty Insurance Co. of Fla. v. DaCosta, Fla.App., 190 So.2d 211 (1966). It is noted that the Pennsylvania Supreme Court has not been impressed by decisions from other states on the subject of attachment. See Girard Fire & Marine Insurance Co. v. Field, supra, where the court said at page 134:
 "Authorities in other states were cited on argument, but we derive little light from them, as the attachment laws of the several states differ essentially amongst themselves and from ours, * * *."