108 F.3d 1379
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellant,
v.
MODERN DROP FORGE COMPANY, Defendant-Appellee.
 No. 96-3735.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 23, 1997.
Decided March 14, 1997.
 
 Before BAUER, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 On September 3, 1996, the National Labor Relations Board ("NLRB") filed a petition for a temporary injunction under section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), against the Modern Drop Forge Company ("the Company"). The NLRB believed that the Company unlawfully failed and refused to bargain with a union which represented the Company's employees.
 
 
 2
 On September 5, 1996, the Company served two Notices of Deposition on the NLRB. First, the Company subpoenaed Elizabeth Kinney, the petitioning Regional Director of the NLRB, with an accompanying request for production of documents including "each and every document supporting your contention that the injunction sought in this matter is just and proper." The Company also subpoenaed the NLRB, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, to supply a representative with knowledge supporting the contention that issuing an injunction would be "just and proper."
 
 
 3
 On September 11, 1996, in response to a motion by the NLRB to limit discovery, the district court indicated that it would allow the Company to engage in some discovery, specifically the deposition of the Rule 30(b)(6) representative. The NLRB designated Kinney, the Regional Director, as the Rule 30(b)(6) representative.
 
 
 4
 On September 18, 1996, the district court ruled that the Company could depose Kinney with respect to "[t]he facts relied upon but not how each one weighed in the ultimate decision [to seek an injunction]." The court continued: "You can't ask the Regional Director ... [whether] this fact was more important to [her] than another fact, or was this more important than that...." The district court concluded that the Company could depose Kinney with regard to "[t]he ultimate conclusion and facts relied upon but not the mental process by which she went from this to that."
 
 
 5
 Kinney's Rule 30(b)(6) deposition was set for 9:00 a.m. on October 10, 1996. Fifteen minutes before the deposition was to start, the NLRB's attorney called the Company's attorney to cancel the deposition. The NLRB's attorney advised the Company that the NLRB would not produce either Kinney or another Rule 30(b)(6) representative as ordered because it believed that the district court was wrong in determining that the NLRB could be deposed regarding its "deliberative process." On that same day, the Company asked the district court to sanction the NLRB by dismissing the action pursuant to Rule 37(b)(2). The Company cited Madden v. Milk Wagon Drivers Union Local 753, 229 F.Supp. 490, 493 (N.D.Ill.1964) in support of its contention that dismissal by the district court was appropriate because the NLRB had obstructed discovery.
 
 
 6
 At a hearing the next day, October 11, an attorney for the NLRB apologized to the district court and stated that, just before the scheduled deposition, the NLRB had been instructed from its Washington headquarters to take the position that Kinney would not answer questions about the NLRB's decisional process. The NLRB indicated it would produce Kinney and permit her to answer questions regarding the procedure used to institute 10(j) proceedings, but would direct her not to answer questions regarding the basis of her decision to recommend an injunction because these questions were irrelevant and were protected by the decisional-process privilege. In response, the district court reiterated its ruling from September 18 and ordered Kinney to appear for deposition at 9:00 a.m. on October 15, 1996 at the Company's offices or the case would be dismissed.
 
 
 7
 Later in the day of October 11, the NLRB faxed a letter to the Company indicating that, at the October 15 deposition, Kinney would answer questions about the procedures the Board follows in 10(j) cases. The fax also indicated that Kinney would not respond to questions about "her knowledge of the facts of the case and what facts she relied upon in making decisions or recommendations in this case," as such questions were irrelevant and privileged under the "decisional process privilege." The Company responded by fax on October 11 indicating that it understood the Board's letter to be a refusal to comply with the district court's order and that it planned to appear before the district court on the morning of October 15 to have the case dismissed.
 
 
 8
 The deposition never took place, and on October 15, 1996, the district court dismissed the case with prejudice so that the NLRB could appeal the discovery order to this Court. The NLRB filed its appeal on October 30, 1996.
 
 
 9
 Although both parties have briefed the issue of whether the district court abused its discretion in entering the discovery order at issue, we decline to address the specifics of the order. Because Kinney's deposition did not take place, we are unable to "sink our teeth" into specific questions which were posed to Kinney which she either answered or refused to answer. The questions at issue now exist only in an abstract form. As we indicated in oral argument, we are therefore placed in the awkward and untenable position of attempting to evaluate theoretical questions which might be posed to Kinney rather than questions which actually were posed.
 
 
 10
 In Hunt Int'l Resources Corp. v. Binstein, 98 F.R.D. 689 (N.D.Ill.1983), the district court used the procedure we feel to be appropriate here. Hunt involved a scenario in which a law firm moved the district court to quash a deposition subpoena directed to a partner in the firm who previously had represented plaintiffs in the case, but who was about to leave the firm. The firm continued to represent some plaintiffs in the case. The district court initially noted that "challenges to the taking of an attorney's deposition, based upon claims that any of the attorney's testimony will involve disclosure of privileged information or 'work product,' have been held to be premature." Id. at 690 (citing Shiner v. American Stock Exchange, 28 F.R.D. 34 (S.D.N.Y.1961)). The court then explained:
 
 
 11
 [C]ompletely preventing the taking of a deposition on either of the above grounds would tend to limit or fix the scope of the examination before it began and would usurp the court's role in deciding whether certain questions seek privileged information. The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary.
 
 
 12
 Id. (emphasis added) (citation omitted). The district court went on to note that although it was aware that the procedure it proposed could be problematic, a prior restraint of the deposition raised "even more troublesome issues." Id. at 691. The court found that a prior restraint of the deposition would require two assumptions: (1) that everything to which the proposed deponent would testify would be subject to the attorney-client privilege and (2) that the deponent would, in some instances, fail to adequately assert the privilege in the deposition. Id. The court concluded that there was no factual basis in the record to warrant those assumptions. It therefore denied the motion to quash the deposition subpoena and ordered the parties to proceed to deposition.
 
 
 13
 Other district courts have used a similar approach of requiring the parties to proceed to deposition and assert their privileges and objections therein. See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D.Ind.1994) ("[D]eponents are expected ... to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection") (citing 8 FED'L PRAC. & PROC. § 2037 at 272); Cooper v. Welch Foods, Inc., 105 F.R.D. 4, 6 (W.D.N.Y.1984) (finding that deposition of attorney should be taken and privileges asserted therein); In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 429, 437-38 (E.D.Pa.1981) ("If the questions to be asked of Mr. Griffin delve into privileged areas then his recourse will be to object and refuse to answer. Such an objection and refusal to answer should of course be predicated upon a sufficient demonstration that the matter inquired into is privileged.... In any event, the Court cannot rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information"); Walker v. United Parcel Services 87 F.R.D. 360, 362 (E.D.Pa.1980) (refusing to allow defendant's attorney to be deposed, but stating that "[t]he Court would ordinarily require attorney-client privilege and work product exception questions to be resolved at a deposition rather than in the abstract in advance." (citing Jamison v. Miracle Mile Rambler, Inc., 536 F.2d 560, 565-66 (3d Cir.1976) and Scovill Mfg. Co. v. Sunbeam Corp., 61 F.R.D. 598 (D.Del.1973)).
 
 
 14
 We are aware that many of these cases, including Hunt, challenge the taking of depositions of attorneys involved in the proceedings. We do not have such a fact scenario here. Nevertheless, we feel that the rationale used by these courts is appropriate here as well. In fact, the suggested procedure is even less troublesome in a case such as this because the constitutionally-protected attorney-client relationship is not at stake.
 
 
 15
 The Company directs our attention to an unreported order from this district in which, during a 10(j) proceeding, Judge Leinenweber, the same judge in this case, ordered the Regional Director of the NLRB to answer the kind of questions the Company proposes here. See Kinney v. Chicago Tribune Co., 1989 WL 91844, at * 2 (N.D.Ill. Aug. 7, 1989). Although certainly not binding authority on us, the magistrate judge's opinion in that case did exactly what we believe to be appropriate here. The magistrate judge looked at questions, one by one, in the context of the entire transcript of the Regional Director's deposition. She then determined specifically, one by one, line by line, which questions the Regional Director could answer. In that case, the district court was then able to deal with questions which actually had been posed to the Regional Director.
 
 
 16
 As we indicated at oral argument, we will be much more willing to address the parties' substantive arguments once we have a tangible record in which to delve, and not mere notions of questions which might be posed. We therefore reverse the district court's dismissal of this action and order the parties to take Kinney's deposition. The Company may pose questions it believes are consistent with the district court's September 18 order. Kinney may answer each individual question she feels is appropriate and refuse to answer each individual question she feels is irrelevant or privileged. This course of action will enable the district court to identify specific challenged questions, as opposed to merely kinds of questions. This will also create a record more suitable for our legal analysis of the issues the parties have identified in their briefs and at oral argument.
 
 
 17
 In sum, we reverse the district court's dismissal of the case and remand for further proceedings not inconsistent with the rulings of this Court.