515 A.2d 956

**Robert J. TRIFFIN t/a General Funding, Appellant,**

v.

**INTERSTATE PRINTING CO., INC. and Girard Bank.**

Superior Court of Pennsylvania.

Argued April 9, 1986.

Filed Sept. 29, 1986.

Henry H. Janssen, Philadelphia, for appellant.

Warren T. Pratt, Philadelphia, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

BECK, Judge:

The issue presented is whether funds of a bankrupt on deposit in a bank are immune from execution by a secured creditor where the Bankruptcy Court has expressly permitted the secured creditor to enforce any security interest he may have in the bankrupt's property under state law.

Appellant Triffin became a secured creditor of Interstate Printing Co., Inc. ("Interstate") by virtue of a Security Agreement between the parties executed on January 15, 1981. Pursuant to the Security Agreement, Interstate granted Triffin a security interest in " ... all ... assets now owned or hereafter acquired; and all proceeds of such assets" of Interstate. This interest secured the repayment by Interstate of all monies then owing or in future owed by Interstate to Triffin. On May 15, 1981, Interstate gave Triffin a promissory installment note in the principal amount of $60,000. The note provided that in the event of

default by Interstate, Triffin could confess judgment against Interstate for the balance due.

In May 1983, Interstate filed a petition in bankruptcy under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania. In August 1983, Interstate opened two bank accounts with appellee Girard Bank (subsequently rechartered as Mellon Bank (East) National Association) (the "Bank"). By order of the Bankruptcy Court dated September 7, 1983, the automatic stay imposed by Section 362 of the Bankruptcy Code was lifted as to Triffin. The Bankruptcy Court's order permitted Triffin to "enforce any security interest in the debtor's property which he may have under state law."

In accordance with the order of the Bankruptcy Court, and in compliance with the confession of judgment rules, Pa.R.C.P. No. 2950 *et seq.*, Triffin filed a complaint in confession of judgment in the amount of $72,000 in the Philadelphia Court of Common Pleas at September Term 1983, No. 2874 and caused judgment to be entered against Interstate. Interstate did not object and has never objected to the entry of the confessed judgment.

On September 19, 1983, seeking to execute his judgment by attaching Interstate's accounts at the Bank, Triffin filed a praecipe for a writ of execution and served the writ along with interrogatories in attachment on the Bank.[1] Pa.R.C.P. Nos. 3103, 3111, 3145.

---

**1.** It should be noted that Interstate itself has never actively participated in the attachment proceedings. Interstate's only participation occurred in connection with Triffin's Petition for Equitable and Supplemental Relief in Aid of Execution, filed September 20, 1983, one day after issuance of the writ of execution. The Petition requested, *inter alia,* an order directing Interstate to deposit all funds it received thereafter in its accounts at the Bank, to refrain from making any payments to anyone in future and to produce to Triffin all of Interstate's original records, including accounts receivable ledgers, and all of its assets. Although not reflected on the docket, the record contains a stamped filed timely answer by Interstate to the Petition. In its answer, Interstate objected to the attachment of the accounts at the Bank on the ground that they were debtor-in-possession accounts not subject to Triffin's security interest. Two weeks later, the Bank

In answer to both these and Triffin's later filed supplemental interrogatories, the Bank admitted having funds of Interstate on deposit. Triffin then moved for entry of judgment on the pleadings under Pa.R.C.P. 3145(a).[2]

In its answer to this motion, the Bank opposed attachment of the accounts, claiming that these accounts were not subject to attachment except pursuant to order of the Bankruptcy Court because they were, in the Bank's terms, "debtor-in-possession" accounts. The lower court ordered depositions to determine whether the accounts were "debtor-in-possession" accounts. A deposition of a bank official was taken and certain documents were produced. After the deposition transcript and documents were filed with the court, the court denied Triffin's motion, and in its order stated that it appeared that the "account at issue is a Debtor-in-Possession account and therefore not subject to attachment...." This timely appeal followed.

■ Initially, we must determine the propriety of the Superior Court's jurisdiction. We conclude that pursuant to Pa.R.A.P. 311(a)(2), the matter is ripe for appellate determination and, therefore, the Superior Court's assertion of jurisdiction is proper.

Rule 311(a)(2) authorizes appeals from interlocutory orders that either do or refuse to modify, confirm or dissolve attachments or similar matter affecting the possession or control of property. The Bank asserts that the order of the trial court did not accomplish any of the results contem-

answered the Petition in substantially the same manner as had Interstate. Although on October 28, 1983 the lower court entered an order denying the Petition, the court later agreed to reconsider the Petition. On March 23, 1984, the lower court ordered that in connection with its reconsideration of the Petition, depositions be taken. This order was later modified when, Triffin having moved for judgment on the pleadings, the court ordered that the depositions be taken in connection with its consideration of that motion.

**2.** Pa.R.C.P. No. 3145(a) provides: "The procedure between the plaintiff and the garnishee shall, as far as practicable, be the same as though the interrogatories were a complaint and the answer of the garnishee were an answer in a civil action."

plated by Rule 311(a)(2). We find that the Bank's assertion is incorrect.

To comply with Rule 311(a)(2), Triffin sought judgment on the pleadings [3] which, if granted, would have confirmed Triffin's attachment.

In opposing Triffin's motion for judgment on the pleadings, the Bank was seeking to have the trial court refuse to confirm the attachment by not entering judgment against the garnishee Bank. This was the heart of the dispute that the lower court's order resolved against Triffin and the court did so only after permitting discovery of the facts pertinent to whether the Interstate accounts could be attached. There was no further action required by the court. The court had all relevant facts before it when it denied Triffin's judgment on the pleadings, thereby refusing to confirm the attachment. Pa.R.A.P. 311(a)(2). Therefore, Triffin's appeal from the court's denial of judgment on the pleadings falls squarely within Pa.R.A.P. 311(a)(2), as an action refusing to confirm an attachment.[4]

■ Turning to the substance of this appeal, Triffin argues that the order of the Bankruptcy Court subjected the accounts to attachment by Triffin. The Bank, on the other hand, asserts that the accounts are the property of Interstate's bankruptcy estate and as such are not subject to attachment.[5]

**3.** Pursuant to Pa.R.C.P. No. 3111(b) it is contemplated that the garnishor, Triffin, will secure a judgment against the Bank, the garnishee, prior to the garnishor's execution upon the debtor's (Interstate's) property held by the Bank. Triffin sought such judgment when it moved for judgment on the pleadings.

**4.** Technically the action taken by Triffin constitutes a garnishment rather than an attachment. Attachment refers to a creditor's seizure of property in the hands of the debtor to collect a debt. Garnishment refers to a proceeding through which a creditor collects his debt out of property of the debtor in the hands of a third party. Rule 311(a)(2) refers specifically to attachment and also to "[s]imilar matter affecting the possession or control of property." We conclude that whether the action is attachment as the trial court refers to it or garnishment, the appealability of the matter is controlled by Rule 311(a)(2).

**5.** In Pennsylvania, a creditor-debtor relationship is established between a depositor and a bank when deposits are made with a bank.

The Bank maintains that since Interstate is a debtor-in-possession of its bankruptcy estate and, as such, generally has all the rights and powers and must perform all the duties and functions of a trustee of the bankrupt's estate, 11 U.S.C.A. §§ 1101(1), 1107(a), the Bankruptcy Code requires the Bank to turn over those accounts only to Interstate as debtor-in-possession. *Id.* § 542(b).

The Bank relies on *Georgia-Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983). In that case, appellant was the debtor-in-possession of a bankrupt contracting firm. Prior to filing for bankruptcy, the general contractor and two property owners had entered into construction contracts. Under these contracts, the owners were indebted to the general contractor. The general contractor was in turn indebted to its materialmen.

After the general contractor filed for bankruptcy, the materialmen claimed that the money due the contractor from the property owners was in fact directly payable to the materialmen, since it was allegedly subject to a state law constructive trust in their favor. The bankruptcy court rejected the materialmens' claims and ordered that the owners pay the money directly to the debtor-in-possession. One of the owners complied. The other owner and the materialmen appealed to the district court which reversed the bankruptcy court. *Id.* at 963–65.

On appeal by the debtor-in-possession, the Court of Appeals for the Fifth Circuit reversed the district court and held that the remaining owner was obligated to pay the debtor-in-possession. In so holding, the Fifth Circuit opined that even if the funds were subject to a constructive trust,

> ... [the debtor-in-possession] had a legal interest in the property so impressed, which was thus property of the estate, § 541(a)(1), required to be turned over to it, § 542(a), (b), subject to the bankruptcy court's power to

*See Prudential Trust Company's Assignment*, 223 Pa. 409, 72 A. 798 (1909). The Bank argues that under the Bankruptcy Code, Interstate's creditor status against the Bank made the money on deposit with the Bank the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(6), (7).

recognize the suppliers' equitable interest, § 541(d) or to issue [a] protective order prohibiting or conditioning its use if a cash equivalent, § 363(c)(3), (4) and § 541(d). Georgia-Pacific [the owner], a debtor of Sigma [the debtor-in-possession], could not refuse to pay over sums due to the estate and to which the estate had legal title on the contention that some other [entity] had a priority or a constructive trust claim to these sums superior to that of Sigma.... It is for the bankruptcy court, not a stakeholder with possession of the assets in which the debtor has at least a legal interest, to determine such contentions.

. . . . .

Accordingly, the district court was in error in not requiring Georgia-Pacific to turn over to Sigma ... the sums owed by it to Sigma for contractual services performed. If indeed all or part of the money so owed was subject to a constructive trust in favor of the suppliers ..., the bankruptcy court would be required to recognize those equitable interests and, perhaps, the debtor-in-possession's sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property.

*Id.* at 968.

We find that rather than establishing the Bank's duty to pay the funds in Interstate's accounts only to Interstate, *Georgia-Pacific* supports precisely the opposite conclusion. As the above-quoted language clearly indicates, it is not for a creditor or a debtor of the bankrupt estate, nor for the debtor-in-possession itself, to determine to whom funds allegedly owed to the estate are to be paid. This is within the exclusive purview of the bankruptcy court. Crucial to the instant case, therefore, is the order of the Bankruptcy Court permitting Triffin "to enforce any security interest in the debtor's property which he may have under state law." Indeed, the record before this Court does not indicate that Interstate appealed the Bankruptcy Court's order or opposed Triffin's confession of judgment against Interstate.

In other cases decided by the courts of this Commonwealth involving a conflict between the execution and attachment procedures available under state law and the control of property of a bankrupt vested in the receivers or trustees thereof, our courts have held that the execution process cannot proceed except upon order of the court controlling the bankruptcy proceeding. *See, e.g., Thompson v. McCleary,* 159 Pa. 189, 28 A. 254 (1893) (execution against property held by receivers set aside and judgment debtor expressly directed to proceed in bankruptcy court to enforce rights in property of bankrupt); *Davis Coal & Coke Co. v. Hess,* 30 Pa.Super. 193 (1906) (suggesting in dictum that state court should stay execution process pending bankruptcy court's resolution of judgment debtor's application for permission to proceed with execution). This precedent demonstrates that Triffin proceeded in precisely the correct manner by obtaining permission of the Bankruptcy Court to enforce his interest in Interstate's property and only then commencing execution proceedings in the court below.

In attempting to avoid Triffin's execution of his judgment, the Bank has refused to recognize the order of the Bankruptcy Court. It resists the attachment of Interstate's accounts because it perceives that it would create for itself potential liability to the bankrupt's (Interstate's) estate. We find the Bank is under a duty to recognize the Bankruptcy Court's order. Triffin's action in executing on his judgment was proper under state law. Under the facts of this case, we conclude that the accounts are not immune from attachment in execution because of the Bankruptcy Court's order. To hold otherwise would place Triffin, a judgment creditor who has complied with the requisites to perfect his claim, in a juridical limbo despite the Bankruptcy Court's order permitting him to pursue that claim in accordance with state law.

We point out that the Bank's characterization of the accounts as "debtor-in-possession" accounts has no legal significance. The Bank has not pointed to any order of any

court or any provision of any law requiring it to so characterize these accounts. Thus, the characterization serves only as an internal aid to the Bank and reflects the fact that the depositor has filed for bankruptcy.

The Bank's attempt to avoid attachment is violative of the order of the Bankruptcy Court which expressly granted Triffin the right to pursue state remedies and removed him from the constraints of the Bankruptcy Code's stay provisions. In all respects, Triffin's right to attachment of Interstate's accounts on deposit with the Bank is valid. Therefore, the trial court erred in denying Triffin's motion for judgment on the pleadings.

Order reversed and case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.