Robert BROWN and Joann Brown, His Wife, Appellants,

v.

Pauline CANDELORA, Executrix of the Estate of Nicholas Yiambilis, a/k/a Nikolas Yiambilis, Deceased, Nationwide Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued March 5, 1997.
Filed Jan. 30, 1998.

Lewis Kates, Philadelphia, for appellants.

Mark L. Parisi, Philadelphia, for Nationwide Ins. Co., appellee.

Before McEWEN, President Judge, and DEL SOLE and HOFFMAN, JJ.

McEWEN, President Judge:.

This Court has not previously addressed the issue presented by this appeal, specifically, whether a plaintiff who has recovered a judgment against an insured tortfeasor may, without obtaining an assignment from the

insured, institute a garnishment action against the tortfeasor's insurer based on claims of bad faith and breach of contract seeking sums in excess of the coverages provided by the terms of the policy. After a careful study of the arguments presented by the parties, we affirm the order entered by the distinguished Judge Norman Ackerman which directed the Prothonotary to set aside the writ and levy of execution filed against Nationwide Insurance Company as garnishee by the appellants, Robert and Joann Brown.

Appellants, Mr. and Mrs. Brown, instituted the underlying action on January 26, 1988, after Mr. Brown sustained a compound ankle fracture in a collision between his motorcycle and a vehicle driven by Nicholas Yiambilis which had occurred on June 9, 1986. Mr. Yiambilis was insured under a policy issued by Nationwide with a bodily injury liability limit of $100,000.00. Approximately three years after suit was commenced and five years after the accident, Mr. Brown's foot became gangrenous and was amputated. Shortly thereafter, Nationwide offered its full policy limits of $100,000.00 to appellants in exchange for a signed release. Appellants rejected this offer and a subsequent offer on March 14, 1994, immediately prior to trial, of $500,000.00, and the case proceeded to trial[1]. The jury returned a verdict in favor of Robert Brown in the amount of $1,075,221.40 and in favor of Joann Brown in the amount of $75,000.00. Thereafter, judgments, which reflected both a reduction for the 15% comparative negligence of Robert Brown and also the imposition of delay damages, were subsequently entered against the estate of Mr. Yiambilis in the amount of $1,449,646.17 in favor of Mr. Brown and $65,750.00 in favor of Mrs. Brown. Following the denial of post-trial motions, an appeal was taken to this Court, which affirmed the judgments as entered. *Brown v. Candelora,* No. 03502 Philadelphia 1994; filed July 13, 1995 (Memorandum). Nationwide then filed a petition for allowance of appeal with the Supreme Court, which was denied.

While these appeals were pending, appellants commenced execution proceedings against Nationwide, as garnishee, alleging that Nationwide had been guilty of bad faith and had thereby become responsible for the entire amount of the judgment entered against Mr. Yiambilis' estate and was as well contractually obligated to pay any delay damages and interest in excess of its policy limits. Nationwide filed preliminary objections and a petition for partial stay or modification. The trial court granted the stay and directed, as a condition, that Nationwide pay into the court its policy limits of $100,000.00. Thereafter, appellants filed a petition seeking the posting of additional security, alleging that Nationwide was responsible for the entire amount of the judgment. The request was denied by the trial court with the court noting that Nationwide had deposited with the prothonotary the limits of its coverage under the policy. The trial court held that the terms of the policy provided for interest payments on all awards except where the policy limits had been formally offered by the insurer. The court reasoned that since such a formal offer was made by Nationwide in September of 1991, it was not obligated to pay interest or delay damages accruing after that time. The court rejected appellants' argument that, because the offer made was conditional upon the signing of a release, there was no "formal offer". The court ruled that the language of the policy did not refer to unconditional offers, only formal offers. Because such a formal offer was made by Nationwide, it found Nationwide had no obligation to pay interest and, therefore, no basis existed for the posting of additional security. Appellant appealed and this Court affirmed the trial court's decision after accepting the appeal from a collateral order. *Brown v. Candelora,* 453 Pa.Super. 677, 683 A.2d 307 (1996) (Memorandum).

Following the conclusion of the appeals at No. 02207 Philadelphia 1995 and No. 03502 Philadelphia 1994, Nationwide petitioned the trial court to set aside the garnishment proceedings instituted by appellants. The court

---

1. Because Mr. Yiambilis died of unrelated causes before trial, the executrix of his estate was substituted as the defendant.

granted the petition and ordered the prothonotary to mark the writ and levy of execution against Nationwide set aside. The trial court concluded that, based upon the Pennsylvania Supreme Court's decision in *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96 (1995), appellants had no standing to prosecute a bad faith garnishment action against Nationwide absent an actual assignment of the chose in action from the insured to appellants. Reasoning that no such assignment existed in this case, the court granted the petition. It further found that the matters of delay damages and interest which had previously been discussed and ruled on by the trial court, and affirmed by the Superior Court on appeal, could not be relitigated in the trial court. This appeal was taken from the order which set aside the writ and levy of execution.

■ Appellants contend that the trial court erred when it granted the motion of Nationwide to set aside this garnishment action instituted by appellants against Nationwide, based upon the argument that their "post judgment attachment execution acts as an equitable assignment to them, as judgment creditors, of [the insured, Nicholas Yiambilis'] claims against Nationwide both in contract and for its bad faith breach of contract", citing *Bianco v. Concepts "100", Inc.*, 291 Pa.Super. 458, 463–467, 436 A.2d 206, 209–210 (1981). While it cannot be disputed that under Pennsylvania law "garnishment is a well-settled, viable remedy available to a judgment creditor to collect on a judgment from the judgment debtor's insurer," *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 12, 670 A.2d 646, 651 (1995), *allo. denied*, 546 Pa. 635, 683 A.2d 875 (1996), those cases are inapplicable to the instant proceeding where the limits of the $100,000 coverage under the policy issued by Nationwide to Nicholas Yiambilis have already been paid to appellants.[2]

■ Garnishment is a remedy created to enable a judgment creditor to reach assets of his debtor held by a stranger and is the means by " 'which a creditor collects his debt out of property of the debtor in the hands of a third party.' " *Garden State Standardbred Sales Co., Inc. v. Seese*, 417 Pa.Super. 15, 18, 611 A.2d 1239, 1241 (1992), quoting *Triffin v. Interstate Printing Co., Inc.*, 357 Pa.Super. 240, 244 n. 4, 515 A.2d 956, 958 n. 4 (1986).

■ Rule 3101(b) of the Rules of Civil Procedure provides, *inter alia*, that:

" Any person may be a garnishee and shall be deemed to have possession of property of the defendant if he

(1) owes a debt to the defendant;

(2) has property of the defendant in his custody, possession or control. . . ."

Pa.R.Civ.P. 3101(b). Where a defendant, insured under a policy of liability insurance, has been found liable to a plaintiff for damages arising from a covered loss, the contract of insurance operates to create a debt in the amount of the judgment, owed by the insurer to the insured. Thus, the insurer both owes a debt to the defendant and has property of the defendant in his possession which is subject to attachment/garnishment by the plaintiff. *See, e.g., Adamski v. Miller*, 545 Pa. 316, 681 A.2d 171 (1996); *Dubrey v. Izaguirre*, 454 Pa.Super. 504, 685 A.2d 1391 (1996); *Strickler v. Huffine*, 421 Pa.Super. 463, 618 A.2d 430 (1992).

■ Where the insured has not assigned any of his rights against his insurer to the judgment creditor, the judgment creditor may reach, via garnishment proceedings, only that "property" in the possession of the garnishee which belongs to the tortfeasor. In those instances where the garnishee is the insurer of the tortfeasor, the property subject to attachment is the applicable limits of the coverages provided by the policy insuring against the loss. *See: Adamski v. Miller, supra; Strickler v. Huffine, supra; Tominello v. Janeway*, 392 Pa.Super. 404, 410, 573 A.2d 218, 221 (1990).

■ The insured's claims against his or her insurer, however, constitute unliquidated claims, choses in action, not subject to gar-

---

**2.** It is precisely because, once the policy limits had been paid, there was no longer any property of the debtor, Nicholas Yiambilis, in the possession of the garnishee, Nationwide, or any "debt" owed by Nationwide to Mr. Yiambilis, that the trial court set aside the instant garnishment proceedings. *See:* Pa.R.Civ.P. 3101(b); 3111(b).

nishment.[3] Only such debts as are not dependent upon a contingency but are certain and payable are properly attachable in garnishment proceedings. An unliquidated claim for breach of contract is not "a debt owed" or "property" and "such a claim may not be attached as if it were the debtor's property in the garnishee's hands." *In Re J. Robert Pierson, Inc.*, 44 B.R. 556, 559 (E.D.Pa.1984).

■ Where the insurer is **not** in possession of property of its insured, as in the instant case where the policy limits have been paid to appellants, garnishment is not an alternative means of prosecuting a claim where a direct action by the appellants against the insurer would be prohibited.

■ Under settled Pennsylvania law, appellants cannot maintain a direct action against Nationwide since:

(a) Appellants are strangers to the contract of insurance. *See: Commonwealth, Department of General Services v. Celli–Flynn*, 115 Pa.Cmwlth. 494, 498, 540 A.2d 1365, 1368 (1988); *Aetna Insurance Co. v. Pennsylvania Manufacturers Association Insurance Co.*, 456 F.Supp. 627, 634 (E.D.Pa.1978). *See also: General Accident Insurance Co. v. Federal Kemper Insurance Co.*, 452 Pa.Super. 581, 589, 682 A.2d 819, 822 (1996); *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 72, 307 N.W.2d 256, 265 (1981).

(b) Appellants are not third party beneficiaries of the contract of insurance between Mr. Yiambilis and Nationwide. *See: Hicks v. Metropolitan Edison Co.*, 665 A.2d 529, 535 (Pa.Cmwlth.1995), *allo. denied*, 544 Pa. 638, 675 A.2d 1253 (1996); *Hughes v. Prudential Lines*, 425 Pa.Super. 262, 268, 624 A.2d 1063, 1067 (1993), *allo. denied*, 535 Pa. 647, 633 A.2d 152 (1993); *Strutz v. State Farm Mutual Insurance Co.*, 415 Pa.Super. 371, 373–376, 609 A.2d 569, 570–571 (1992), *allo. denied*, 532 Pa. 657, 615 A.2d 1313 (1992); *Rowe v. U.S. Fidelity and Guaranty Co.*, 421 F.2d 937,

939–940 (4th Cir.1970). *Accord: Herrig v. Herrig*, 844 P.2d 487, 492 (Wyo.1992) ("The third-party-beneficiary argument has been rejected by virtually every court to address the issue, and we join those courts today. *See, e.g., Page v. Allstate Insurance Company*, 126 Ariz. 258, 614 P.2d 339 (Ct.App.1980); *Scroggins v. Allstate Insurance Company*, 74 Ill.App.3d 1027, 30 Ill. Dec. 682, 393 N.E.2d 718 (1st Dist.1979); and *Murphy v. Allstate Insurance Company*, 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976).")

(c) Appellants were owed no duty by Nationwide, so that there can be no claim of breach of a duty. *See: Strutz v. State Farm Mutual Insurance Co., supra; Messina v. Nationwide Mutual Insurance Co., supra; Murray v. Allstate Insurance Co.*, 209 N.J.Super. 163, 168, 507 A.2d 247, 250 (1986).

(d) Appellants sustained no damages as a result of any breach of the contract of insurance by Nationwide since, as a result of Nationwide's refusal to promptly settle appellants' claims for the policy limits of $100,000, appellants have obtained a significant excess judgment in addition to receipt of the $100,000 policy limits.

■ As this Court noted in *Strutz v. State Farm Mutual Insurance Co.*, 415 Pa.Super. 371, 374, 609 A.2d 569, 571 (1992), *allo. denied*, 532 Pa. 657, 615 A.2d 1313 (1992):

[T]he duty to negotiate a settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant. By asserting its policy right to handle all claims, the insurer assumes a fiduciary position toward the *insured* and becomes liable to act in good faith and with due care in representing the interests of the **insured**. *Hall v. Brown*, 363 Pa.Super. 415, 526 A.2d 413 (1987), *allo. denied*, 522 Pa. 624, 564 A.2d 916 (1989)

---

**3.** Characterization of the causes of action an insured may assert in a bad faith action as either contract or tort is not easily resolved as it appears that actions sounding in both tort and contract may be pursued by the insured. *See,* *e.g., Messina v. Nationwide Mutual Ins. Co.*, 302 U.S.App.D.C. 384, 387, 998 F.2d 2, 5 (D.C.Cir. 1993)("bad faith tort"); *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 63–68, 307 N.W.2d 256, 261–262 (1981).

*Strutz, supra* (emphasis added). *Accord: Seasor v. Liberty Mutual*, 941 F.Supp. 488, 492 (E.D.Pa.1996), *aff'd.*, 116 F.3d 469 (3rd Cir.1997); *Klinger v. State Farm Mutual Automobile Insurance Co.*, 895 F.Supp. 709, 716 (M.D.Pa.1995), *aff'd.*, 115 F.3d 230 (3rd Cir.1997).

Appellants, in the instant case, however, have not attempted to use the garnishment proceedings to attach the value of the liability insurance policy issued by Nationwide to Mr. Yiambilis, which they have already received, but, rather, they claim they may utilize the writ to attach and seize the choses in action which the law has vested in Mr. Yiambilis's estate as a result of the contractual relationship between Mr. Yiambilis and Nationwide, a relationship as to which appellants are strangers.

> The Pennsylvania Supreme Court has long held that an insurer must act with the "utmost good faith" toward its insured. *Fedas v. Insurance Co. of Pa.*, 300 Pa. 555, 558, 151 A. 285, 286 (1930); *see also Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989); *Cowden v. Aetna Casualty & Sur. Co.*, 389 Pa. 459, 134 A.2d 223 (1957). This heightened duty is necessary because of the special relationship between an insurer and its insured and the very nature of the insurance contract. The insurer's duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement. *See, e.g., Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966).

*Romano v. Nationwide Mutual Insurance Co.*, 435 Pa.Super. 545, 550–551, 646 A.2d 1228, 1231 (1994). As our esteemed Judge James R. Cavanaugh, writing for the panel in *Hall v. Brown*, 363 Pa.Super. 415, 526 A.2d 413 (1987), *allo. denied*, 522 Pa. 624, 564 A.2d 916 (1989), astutely observed:

> It is settled law that an insurer may be held liable for the entire amount of the judgment against its insured, regardless of the policy limits, if in handling the claim the insurer acted in bad faith in the discharge of its contractual duties. *Cowden*

*v. Aetna Casualty & Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957). By asserting a right under the policy to handle all claims, including a right to make a binding settlement, the insurer assumes a fiduciary position toward the insured and becomes liable to act in good faith and with due care in representing the interests of the insured. *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A.2d 320 (1963); *Gray v. Nationwide Mutual Insurance Company*, 422 Pa. 500, 223 A.2d 8 (1966); *Moody v. Nationwide Insurance Company*, 257 Pa.Super. 642, 390 A.2d 311 (1978). The insurer has not satisfied the good faith standard merely by demonstrating that it acted sincerely. More is required, including an intelligent and objective appraisal of the case in order to best determine the advisability of settlement. *Shearer v. Reed*, 286 Pa.Super. 188, 428 A.2d 635 (1981). In order to recover, the insured must prove by clear and convincing evidence that the carrier acted in bad faith. *Cowden, supra.*

As the preceding discussion demonstrates, a determination by the factfinder that an insurer has acted in bad faith toward its insured is anything but a mechanical one. Rather, it is one which relies on consideration of many difficult to quantify factors, such as the reasonableness of a refusal to settle in light of the particular facts and circumstances of the underlying claim. Where the carrier has paid the limits of its policy, its liability may be enlarged provided the defendant (or the plaintiff under an assignment of rights) is able to demonstrate in a subsequent action that it breached its duty to act in good faith. In the case at bar there has been no contention that the defendant insured assigned her potential claim for bad faith against Geico to the appellee.

*Hall v. Brown, supra* at 419–420, 526 A.2d at 415–416.

The Pennsylvania Supreme Court, in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), held that there was no common law remedy for an insured against his or her own insurer for the **tort** of bad

faith on the part of an insurer in the handling of a claim for *first party benefits.* The Legislature responded with the Act of February 7, 1990, P.L. 11, No. 6, § 3, which provides:

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith *toward the insured,* the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371 (emphasis added). This Court thereafter concluded that Section 8371 of the Judicial Code did and was intended to create an independent cause of action, separate and distinct from the underlying contractual insurance claims arising from the express terms of the contract of insurance. *Nealy v. State Farm Mutual Automobile Insurance Co.,* 695 A.2d 790, 793 (Pa.Super.1997); *Romano v. Nationwide Mutual Insurance Co., supra ; March v. Paradise Mutual Insurance Co.,* 435 Pa.Super. 597, 599, 646 A.2d 1254, 1256 (1994); *Kauffman v. Aetna Casualty and Surety Co.,* 794 F.Supp. 137, 140 (E.D.Pa.1992); *Lombardo v. State Farm Mutual Automobile Insurance Co.,* 800 F.Supp. 208, 210 (E.D.Pa.1992); 14 Summ.Pa.Jur.2d, Insurance § 22:8 (1994).

Thus, the potential claims which an insured, such as Mr. Yiambilis, **now** has against his or her insurer as a result of

Section 8371, are no longer restricted solely to the amount of any excess liability judgment entered against the insured as a result of a covered loss, but include as well compensatory damages for foreseeable damages proximately caused by the insurer's breach of the fiduciary duties owed to the insured as a result of the contractual relationship between the insurer and the insured, as well as interest and attorney's fees, and, significantly, punitive damages which may substantially exceed the amount claimed by the judgment creditor as a result of the judgment entered against the insured in the underlying action. *See, e.g., Polselli v. Nationwide Mutual Fire Insurance Co.,* 126 F.3d 524 (3rd Cir.1997); *Klinger v. State Farm Mutual Automobile Insurance Co.,* 115 F.3d 230 (3rd Cir.1997).

Appellants in the instant case argue that solely by virtue of their status as judgment creditors of the estate of Mr. Yiambilis, they may attach and seize these choses in action vested in Mr. Yiambilis by virtue of contract and tort law, as well as the bad faith statute, and, without the consent of the insured or his estate, lay claim to those causes of action and prosecute or compromise those claims themselves.[4] Such a scenario raises significant constitutional issues [5] and cannot be harmonized with basic and settled principles of contract and tort law. Moreover, a rule permitting such actions would open a Pandora's box of ill advised litigation since, once it is determined that an assignable, unliquidated chose in action may be seized pursuant to a garnishment proceeding, industrious attorneys will begin to explore on behalf of their creditor clients, via interrogatories in aid of execution, all of the potential tort claims which

---

**4.** The entry of a judgment in favor of appellants, as "equitable assignees" of Mr. Yiambilis, either by way of settlement or verdict, in an action against Nationwide, would foreclose any subsequent claim or action by the estate of Mr. Yiambilis against Nationwide as a result of its handling of the underlying tort claim. *See, e.g., Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313 (1983).

**5.** While we believe, as noted by the learned Justice Stephen A. Zappala, that *Shaw v. Botens,* 403 F.2d 150 (3rd Cir.1968), was wrongly decided, it was decided at a time when the **sole** recovery available under Pennsylvania law for the bad faith breach of a contract of liability insurance

was the amount of the excess judgment entered against the insured. This was the basis for the belief of the *Shaw* Court that "the claim became definite and liquid" upon the entry of the judgment against the insured. Since no other sums would have been recoverable in a bad faith action brought by the **insured** against the insurer, there could not be any claim of a deprivation of property without just compensation by an insured who had had his causes of action against his insurer "appropriated" by his judgment creditor. With the passage of Section 8371 of the Judicial Code, the reasoning of *Shaw,* previously tenuous, collapses.

their clients' debtors may have against physicians, attorneys, manufacturers, drivers, and others, who have had dealings with their clients' judgment debtors within the period of the statute of limitations.[6] *Cf. Ammon v. McCloskey*, 440 Pa.Super. 251, 655 A.2d 549 (1995) (assignment of legal malpractice claim against attorney by driver of car against whom passenger obtained judgment in tort action); *Hedlund Manufacturing Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988); *Ridgeway Court, Inc. v. James J. Canavan Insurance Assoc. Inc.*, 348 Pa.Super. 136, 501 A.2d 684 (1985) (plaintiff accepted $100,000 in available insurance coverages and an assignment of the rights of the corporate defendants against their insurance broker for failure to provide adequate insurance coverage in exchange for a release of liability for the corporate defendants).

Our Supreme Court, in *Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96 (1995), while addressing the issue of the effect of the payment of first party UIM benefits upon an outstanding judgment against the underinsured tortfeasor, noted that the appellant had

> commenced the instant "bad faith garnishment action" against [the tortfeasor's] insurer, State Auto, by filing a writ of execution for $50,000 plus interest based upon the existing judgment against [the tortfeasor], naming State Auto as garnishee.[2]

---

2  There is no basis in law for such a procedure since State Auto does not owe money to Beane, nor does it have in its possession assets belonging to Beane. State Auto fulfilled its contractual obligation and paid the limits of its policy. There is therefore nothing in the hands

6. If it is good public policy, and we believe it is, not to allow third parties to decide whether such accusations should be made by way of judicial proceedings, it would seem to be irrelevant whether the duty of care and good faith was implied by the law because of a contract or whether the law imposed the duty in the absence of contract. A doctor's relation with his patient and a lawyer's relation with his client are contractual, and, because of this relationship, the law imposes a duty of care and good faith. Few, if any, would assert that claims against doctors and lawyers for malpractice should be garnishable and we are unable to distinguish between the implied obli-

of State Auto which is subject to garnishment. Beane's right to bring an action for bad faith refusal to settle is not a debt, but an unliquidated claim. The alleged debt is contingent upon proof that State Auto had breached some duty to Beane in failing to settle.

We assume the concept of a "bad faith garnishment action" originated in the federal case of *Shaw v. Botens*, 403 F.2d 150 (3rd Cir.1968). The common pleas court cited this decision in its denial of State Auto's motion to dismiss. *Shaw* involved an action under the Pennsylvania Wrongful Death and Survival Act for the death of an individual killed while a passenger in a car driven by the defendant. A judgment for the plaintiff was entered which exceeded the limit of the defendant's insurance policy. The defendant was represented by his insurer's counsel, who had refused to settle for the policy limits. Plaintiff filed a praecipe for writ of execution against defendant, naming defendant's insurer as garnishee.

The *Shaw* court permitted the garnishment action and expressly held that the Pennsylvania garnishment proceeding is available to determine the validity of an alleged claim of a judgment debtor against the garnishee-insurer. *Id.* at 155. The federal court, however, noted that there were no Pennsylvania cases on point and thus it was predicting how our court would rule on the issue based on our previous related case law. The *Shaw* court's prediction was inaccurate.

Great emphasis was placed on our decision in *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966), where we held that the failure of an insurer to comply with its obligation to act in good faith and with due care in representing the interests of the insured constitutes a breach of a contractual obligation for which an action in assumpsit will lie. We further held in *Gray* that this contractual obligation is assignable by the insured to a plaintiff who secured a judgment in a personal injury action against the insured. In *Gray*, however, unlike *Shaw* and the instant case, there was an actual assignment of the cause of action from the judgment debtor/insured to the judgment creditor. The *Shaw* court improperly extended *Gray* to circumstances where an actual assignment of the cause of

gations of doctors and lawyers to exercise care and good faith and those of the insurance company in the present instance. If "implied contractual duty" is the "sesame" that opens the door of garnishment, it may become slightly drafty within. It is important that the law not be perverted in an attempt to reach what, in this case, would seem to be a desirable result when there are many similar situations which cannot be distinguished and in which the result sought would be undesirable and inappropriate.

*Pringle v. Robertson*, 258 Or. 389, 395, 483 P.2d 814, 815 (1970).

action from the judgment debtor to the judgment creditor has not occurred.

Beane could have expressly assigned his bad faith claim to appellant pursuant to *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966). Had that suit been successful, appellant would have merely executed on the judgment rather than initiated a garnishment proceeding.

Curiously, however, State Auto never objected to the proceedings on these grounds.

*Johnson v. Beane, supra* at 451 and n. 2, 664 A.2d at 98 and n. 2. While this clear expression of the view of the majority of our Supreme Court may be but dicta, as argued by appellants, our role as an intermediate appellate court [7], as well as reason and logic, compel that we hold in conformity therewith.

Under Pennsylvania law, as well as in the majority of American jurisdictions [8], an insured's claims against his or her insurer, in the nature of breach of contract, breach of fiduciary duty, and bad faith, as well as claims under Section 8371 of the Judicial Code for punitive damages, counsel fees and interest, are assignable.[9] *Barr v. General Accident Group Insurance Co.*, 360 Pa.Super. 334, 337–341, 520 A.2d 485, 487–488 (1987), *allo. denied*, 517 Pa. 602, 536 A.2d 1327 (1987). *See, e.g., Scopel v. Donegal Mutual Insurance Co.*, 698 A.2d 602 (Pa.Super.1997); *Butterfield v. Giuntoli, supra*; *Stidham v. The Millvale Sportsmen's Club*,

421 Pa.Super. 548, 618 A.2d 945 (1992); *Alfiero v. Berks Mutual Leasing Company*, 347 Pa.Super. 86, 500 A.2d 169 (1985); *Anno. "Right of Injured Person Recovering Excess Judgment Against Insured to Maintain Action Against Liability Insurer for Wrongful Failure to Settle Claim."*, 63 A.L.R.3d 677 (1975).

While we believe the expression of view of the Supreme Court in *Johnson v. Beane, supra*, compels our affirmance of the trial court's order in the instant case, sound reasons of public policy require such a result as well. The compelling public policy considerations raised by this issue have been aptly summarized by Justice Newsom of the Court of Appeals of California in *Smith v. State Farm Mutual Automobile Insurance Co.*, 5 Cal.App.4th 1104, 1111, 7 Cal.Rptr.2d 131, 135–136 (1992):

" ' public policy permitting or proscribing tactical weapons developed by claimants and insurers should be shaped by two influences: (1) the public interest in encouraging settlements, and (2) fairness, that is, equalization of the contenders' strategic advantages.' The policy encouraging settlements dictates that an insurer should not be permitted 'to take advantage of its own close-fisted, intractability in rejecting an earlier settlement offer.' *Critz v. Farmers Insurance Group, supra* 230 Cal.

---

**7.** "[W]hen presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue **as we predict** our Supreme Court would do." *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 441 Pa.Super. 446, 461, 657 A.2d 1252, 1260 (1995), *rev'd.*, 549 Pa. 518, 701 A.2d 1330 (1997) (emphasis supplied).

**8.** The Supreme Court of Maryland, in determining, under Maryland law, that a cause of action for bad faith failure to settle is assignable, noted that

[i]t is the rule in the majority of jurisdictions that have addressed the issue. *See, e.g., Consolidated Am. Ins. Co. v. Mike Soper Marine Services.*, 951 F.2d 186, 190 n. 2 (9th Cir.1991)(applying California law); *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1132–33 & n. 7 (D.C.Cir.1989)(applying District of Columbia law)(citing numerous cases); *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 161 Ariz. 590, 780 P.2d 423, 426–27 (Ariz.App. 1989), *vacated in part on other grounds*, 164

Ariz. 256, 792 P.2d 719 (1990); *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 178 Cal. Rptr. 343, 356, 636 P.2d 32, 45 (1981); *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 202 (1958); *Aaron v. Allstate Ins. Co.*, 559 So.2d 275, 277 (Fla. Distr.Ct.App.), review denied, 569 So.2d 1278 (Fla.1990); *Glenn v. Fleming*, 247 Kan. 296, 313–316, 799 P.2d 79, 90–91 (1990); *Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 564– 65 (Mo.App.1990); *Dumas v. State Farm Mut. Auto. Ins. Co.*, 111 N.H. 43, 46, 274 A.2d 781, 783 (1971); *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 510, 223 A.2d 8, 13 (1966); *Mello v. General Ins. Co.*, 525 A.2d 1304, 1305–06 (R.I.1987). All of these cases involve assignments by insureds to the plaintiffs in the underlying actions. *Medical Mutual Liability Insurance Society of Maryland v. Evans*, 330 Md. 1, 29, 622 A.2d 103, 116–117 (1993).

**9.** Although not specifically noted in the opinion written by this Court, it would appear that there was an assignment by the insured judgment debtor in *Boring v. LaMarca*, 435 Pa.Super. 487, 646 A.2d 1199 (1994).

App.2d 788 at pp. 800–801, 41 Cal.Rptr. 401 (1964). This objective is achieved by allowing the insured the right to assign a cause of action to the claimant based on the insurer's rejection of the offer. The assignment also equalizes the strategic advantages between the insured and the insurer. Where the insurer breaks its obligation of good faith settlement, it exposes its policyholder to the sharp thrust of personal liability. But by assigning his claim against the insurer in exchange for a covenant to hold harmless, the insured can turn the insurer's wrongful rejection into a bargaining strength in dealing with the claimant."

*Smith v. State Farm Mutual Automobile Insurance Co., supra. Accord: Barr v. General Accident Group Insurance Co., supra* at 343, 520 A.2d at 490; *Gray v. Nationwide Insurance Co., supra* at 510–511, 223 A.2d at 12–13.

Surely worrisome would be the injustice worked upon the insured were we to allow a judgment creditor to seize the choses in action the insured possesses against his insurer, while the insured is suffering under a sizable judgment for which his insurer wrongly refused to indemnify him, and who would then by such a device be "seriously prejudiced ... because he would be deprived of the right to bargain with the injured party for a release of liability as consideration for the assignment." *Shaw v. Botens*, 278 F.Supp. 226, 229 (M.D.Pa.1967), *rev'd.*, 403 F.2d 150 (3rd Cir.1968). Such an insured has been deprived of his opportunity, recognized by our statutes, to make himself whole [10] by proceeding against his insurer, and would be burdened by a judgment which may not be fully extinguished by the recovery obtained by the judgment creditor in an action prosecuted by the judgment creditor against the insurer.

▐ As a result, we conclude that Pennsylvania should be added to the many courts which have specifically addressed and rejected the argument that an injured plaintiff may proceed by way of a garnishment or direct action, against the tortfeasors' insurer, seeking a recovery in excess of the policy limits based on an alleged bad faith breach of the insurer's duty to the insured tortfeasor. *See, e.g., Stewart v. State Farm Insurance Co.*, 454 So.2d 513 (Ala.1984); *OK Lumber Co. v. Providence Washington Insurance Co.*, 759 P.2d 523 (Alaska 1988); *Page v. Allstate Insurance Co.*, 126 Ariz. 258, 614 P.2d 339 (1980); *General Accident Fire and Life Assurance Corp. v. Little*, 103 Ariz. 435, 443 P.2d 690 (1968); *Moradi–Shalal v. Fireman's Fund Insurance Co.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988); *Steen v. Aetna Casualty & Surety Co.*, 157 Colo. 99, 401 P.2d 254 (1965); *Chittick v. State Farm Mutual Automobile Insurance Co.*, 170 F.Supp. 276 (D.Del.1958); *Canal Insurance Co. of Greenville S.C. v. Sturgis*, 114 So.2d 469 (Fla.App.1959), *aff'd.*, 122 So.2d 313 (Fla. 1960); *Francis v. Newton*, 75 Ga.App. 341, 43 S.E.2d 282 (1947); *Kennedy v. Kiss*, 89 Ill. App.3d 890, 45 Ill.Dec. 273, 412 N.E.2d 624 (1st Dist.1980); *Scroggins v. Allstate Insurance Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1st Dist.1979); *Bennett v. Slater*, 154 Ind.App. 67, 289 N.E.2d 144 (1972); *Yelm v. Country Mutual Insurance Co.*, 123 Ill.App.2d 401, 259 N.E.2d 83 (1970); *Bates v. Allied Mutual Insurance Co.*, 467 N.W.2d 255 (Iowa 1991); *Linscott v. State Farm Mutual Automobile Insurance Co.*, 368 A.2d 1161 (Me.1977);*Bean v. Allstate Insurance Co.*, 285 Md. 572, 403 A.2d 793 (1979); *Lisiewski v. Countrywide Insurance Co.*, 75 Mich.App. 631, 255 N.W.2d 714 (1977); *Rutter v. King*, 57 Mich.App. 152, 226 N.W.2d 79 (1974); *Duncan v. Lumbermen's Mutual Casualty Co.*, 91 N.H. 349, 23 A.2d 325 (1941); *Murray v. Allstate Insurance Co.*, 209 N.J.Super. 163, 507 A.2d 247 (1986); *Biasi v. Allstate Insurance Co.*, 104 N.J.Super. 155, 249 A.2d 18 (1969), *certif. denied*, 53 N.J. 511, 251 A.2d 450 (1969); *Allstate Insurance Co. v. Amick*, 680 P.2d 362 (Okla.1984); *Cue v. Casualty Corp. of America*, 537 P.2d 349 (Okla.App.1975); *Pringle v. Robertson*, 258 Or. 389, 483 P.2d 814 (1971); *Auclair v. Nationwide Mutual Insurance Co.*, 505 A.2d 431 (R.I.1986); *Whittington v. Nationwide*

---

**10.** The insured who has been denied the right to a defense as well as the right to indemnity by his insurer may have also incurred substantial sums in counsel fees and costs as well as having suffered the entry of an adverse judgment in the underlying action.

*Mutual Insurance Co.,* 263 S.C. 141, 208 S.E.2d 529 (1974); *Dillingham v. Tri–State Insurance Co.,* 214 Tenn. 592, 381 S.W.2d 914 (1964); *Ammerman v. Farmers Insurance Exchange,* 19 Utah 2d 261, 430 P.2d 576 (1967); *Paul v. Kirkendall,* 6 Utah 2d 256, 311 P.2d 376 (1957); *Murray v. Mossman,* 56 Wash.2d 909, 355 P.2d 985 (1960); *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981); *Herrig v. Herrig,* 844 P.2d 487 (Wyo.1992); *Seguros Tepeyac, S.A. Compania Mexicana v. Bostrom,* 347 F.2d 168 (5th Cir.1965); *Shaheen v. Preferred Mutual Insurance Co.,* 668 F.Supp. 716, 718–719 (D.N.H.1987); *Tabben v. Ohio Casualty Insurance Co.,* 250 F.Supp. 853 (E.D.Ky.1966); *Wessing v. American Indemnity Co.,* 127 F.Supp. 775 (D.Mo.1955).

Thus, we affirm the order which set aside the writ and levy of execution.[11]

Order affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

Because I cannot accept the Majority's conclusion that the result it reaches is compelled by previous expressions of view by our supreme court and public policy, I respectfully dissent. I would rule that Appellants could bring a garnishment action based on a claim of bad faith and breach of contract against the tortfeasor's insurer, even absent a written assignment from the tortfeasor.

Both this court and the trial court relied upon the Pennsylvania Supreme Court's decision in *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995) to conclude that Appellants had no standing to bring a bad faith garnishment action against Nationwide absent an actual assignment of a bad faith claim from the insured to Appellants. Critical to a decision in this case is an interpretation of our supreme court's decision in *Johnson v. Beane. Id.* In *Johnson,* an automobile accident victim brought a garnishment action alleging

bad faith for failure to settle against the tortfeasor's insurer. The victim had obtained a $75,000 judgment against the tortfeasor. The tortfeasor's insurer paid its $25,000 policy limits. The victim received the remaining $50,000 from her underinsurance motorist carrier. Thereafter, she commenced the bad faith garnishment action against the tortfeasor's insurer for $50,000, alleging that the insurance company acted in bad faith in dealing with its insured by failing to settle the matter prior to trial for the policy limits. The court specifically held "that when an injured party is fully compensated for a particular loss by her underinsurance carrier, her right to sue the tortfeasor is extinguished." *Id.* at 451, 664 A.2d at 98. It summarized that "because Appellant has received the full value of the remitted verdict she has no claim to pursue." *Id.* at 457, 664 A.2d at 101. Thus, the issue of the validity of such a garnishment action absent an assignment from the tortfeasor was not before the court and not necessary to its decision. However, comments regarding this question were made in two footnotes in the court's opinion.

In footnote three, the court remarked that although it was precluded from deciding the case based upon the validity of the action because such a claim was not raised, it questioned whether a judgment creditor can bring a civil bad faith action against a judgment debtor's insurer. It opined that the insurer owes no duty to the creditor and has no contractual relationship with her; rather the insurer's duty to act in good faith runs only to its insured. *Id.* at 454, 664 A.2d at 99, fn. 3.

Discussion regarding the effect of an assignment of a bad faith claim was set forth in footnote two. There the court attempted to trace the "origin" of the concept of a bad faith garnishment action. The court cited to the federal case of *Shaw v. Botens,* 403 F.2d 150 (3rd Cir.1968), which permitted a garnishment action and held that garnishment proceedings are available in Pennsylvania to

11. The claim of appellants, that Nationwide is liable for pre- and post-judgment interest and delay damages, has been previously addressed and rejected by a prior panel of this Court, *Brown v. Candelora,* 453 Pa.Super. 677, 683 A.2d

307 (No.2207 Phila.1995, filed May 31, 1996), and may not be reconsidered by a panel of this Court. *Winpenny v. Winpenny,* 434 Pa.Super. 348, 643 A.2d 677 (1994).

determine the validity of an alleged claim of a judgment debtor against the garnishee-insurer. Our supreme court criticized this conclusion and remarked that the *Shaw* court was relying on the decision in *Gray v. Nationwide Mut. Ins. Co.*, 422 Pa. 500, 223 A.2d 8, (1966), in which there was an actual assignment of the cause of action from the judgment debtor to the judgment creditor. The court in *Johnson* noted that there was not an express assignment of the bad faith claim in the case before it; however the insurer had never raised an objection on these grounds. *Johnson v. Beane, supra.* at 453–454, 664 A.2d at 98–99, fn. 2.

I do not read the comments contained in these footnotes as a directive which will not permit a bad faith garnishment action by a victim/judgment debtor to proceed against the tortfeasor's insurer absent an assignment from the tortfeasor. This issue was never presented to the court in *Johnson* and was not necessary to the ultimate decision of the case. In fact, Justice Cappy in a Concurring Opinion remarked that he was "troubled" by the discussion set forth in these footnotes. *Id.* at 458, 664 A.2d at 101. (Concurring Opinion by Justice Cappy). He stated: "It is beyond peradventure that the Majority's discussion in footnotes two and three is dictum and devoid of precedential authority." *Id.* at 459, 664 A.2d at 101.

The Majority recognizes that these statements set forth in *Johnson*, "may be" dicta but conclude that "reason and logic, compel that we hold in conformity" with this expression. *Majority opinion at 111.* While I have carefully considered this position, I believe that it is entirely appropriate to allow Appellants to proceed with a garnishment action against Nationwide based upon a bad faith claim, even absent an express assignment.

First, I note, despite criticism of the application of *Gray v. Nationwide Mut. Ins. Co.*, *supra*, to a garnishment action absent an assignment, the court in *Gray* never made a determination that a bad faith cause of action must be expressly assigned. *Johnson v. Beane, supra.* In *Gray* there was an express assignment of a bad faith claim by an insured to a judgment creditor and the court was asked to decide whether the insured's payment of the balance due to the judgment creditor was a prerequisite to bringing the action, and whether the insured's right of action was assignable. The court held that payment of the balance was not a prerequisite and the right of action was assignable.

In answering these two questions, the court employed reasoning I find instructive. When ruling that it was not necessary for a judgment debtor to pay the creditor the balance due on the judgment in excess of the policy limits before a bad faith claim could be pursued, the court looked to the policy reasons which supported this decision. Among the reasons provided was that such a ruling would prevent an insurer from benefiting from the impecuniousness of its insured.

In considering whether an assignment of the insured's right to his creditor was valid, the court dispelled arguments that the creditor was a stranger to the relationship between the insured and the insurer and that the creditor actually benefited by the action of the insurer by means of a verdict larger than the policy limits which could have been offered in settlement. The court reasoned that although these statements may be true they were irrelevant since the creditor was not suing in his own right, but rather as an assignee of the insured, and thus, standing in the shoes of the insured. *Gray v. Nationwide Mut. Ins. Co., supra.* at 507, 223 A.2d at 11. It further found that the insurer's duty to the creditor "arises not so much under the terms of the contract but is said to arise because of the contract and to flow from it." *Id.* at 509, 223 A.2d at 12. The court reasoned that permitting assignment in cases such as the one before it would ensure that bankruptcy proceedings would not be necessary. Rather, "the insured, after a judgment has been rendered against him, can follow the more simple and less expensive procedure of assigning the cause of action against his insurer, directly to his judgment creditor." *Id.* at 510, 223 A.2d at 12.

Absent the existence of an express assignment, a garnishment has long been a viable remedy for a judgment creditor to collect a judgment from the judgment debtor's insurer. *Bianco v. Concepts "100" Inc.*, 291

Pa.Super. 458, 436 A.2d 206 (1981). In such instances the garnishment "operates as an equitable assignment to the judgment creditor of the judgment debtor's claim against the garnishee." *Id.* at 463, 436 A.2d at 208.

Thus, I would find that even absent an express assignment, this matter can proceed because the garnishment action operates as an equitable assignment to Appellants of the tortfeasor's claim of bad faith against Nationwide. By means of this equitable assignment, Appellants stand in the shoes of the tortfeasor, Nationwide's insured. Further, like the court in *Gray*, I believe there are sound policy reasons for this decision.

The court in *Gray* recognized the benefits of streamlining the process to enable a judgment creditor to proceed against the judgment debtor's insurer directly. That same purpose would be fostered by allowing such actions to proceed through garnishment without a formal assignment. Requiring a formal assignment can completely frustrate the bad faith claim. If the insured never granted the assignment, the insurer could benefit from its bad faith actions. Similarly, an insurer could agree to settle a bad faith claim with its insured for substantially less than the verdict amount. This type of action could create a process which protects an insurer who engages in bad faith conduct. In short, I can perceive of no reason to require an express assignment, and like the court in *Gray*, I believe the result I suggest prevents an insurer from benefiting from its wrongful conduct and provides a simple procedure to enable the creditor to collect upon a finding of bad faith.

The Majority suggests that this view prevents the insured from presenting a claim for bad faith damages. This is not the case. In a garnishment proceeding, the injured party is only entitled to receive that portion of the "bad faith" damages necessary to satisfy the judgment. The insured is free to maintain an action for its damages, i.e., attorney fees, beyond the judgment sum.

Nor should we fear the opening of a "Pandora's box" of litigation. While this phrase is often used to suggest the action taken will result in frivolous litigation, history discloses that is not the case. *See, In re John Doe*

*Corps. A, B, C, D & E*, 507 Pa. 137, 489 A.2d 182 (1985); *Bigley v. Unity Auto Parts, Inc.*, 496 Pa. 262, 436 A.2d 1172 (1981); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970); *Duffy v. National Janitorial Services*, 429 Pa. 334, 240 A.2d 527 (1968); *Burger's Estate*, 425 Pa. 395, 229 A.2d 463 (1967); *Commonwealth v. Ladd*, 402 Pa. 164, 166 A.2d 501 (1960); *46 South 52nd St. Corp. v. Manlin*, 398 Pa. 304, 157 A.2d 381 (1960); *Berger v. Public Parking Auth. of Pittsburgh*, 380 Pa. 19, 109 A.2d 709 (1954). Rather, I am persuaded by the eloquence of the late Justice Michael Musmanno's dissent in *Knaub v. Gotwalt*, 422 Pa. 267, 220 A.2d 646 (1966). "I would rather see the opening of a Pandora's box than the closing of a coffin over an elementary principle of justice." *Id.* at 277, 220 A.2d at 650. Apparently, thirteen years later, Pandora's box disappeared when the Supreme Court overturned *Knaub* in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979).

It is for these reasons that I believe the garnishment action should proceed.